No. 24-40709

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

DAVID ALLEN HAVERKAMP, ALSO KNOWN AS BOBBIE LEE HAVERKAMP
*Plaintiff-Appellant,*

*v.*

DOCTOR LANNETTE LINTHICUM; OWEN MURRAY; CYNTHIA JUMPER; PHILLIP KEISER; JOHN BURRUSS; MICHELLE ERWIN; KRIS COONS; BRIAN EDWARDS; JULIA HILNER,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi Division
No. 2:17-CV-18 (Hon. Drew B. Tipton, U.S. District Judge)
_____

## APPELLANT'S OPENING BRIEF
_____

D Dangaran                    Ace McLaurin Factor
Samuel Weiss                  Chanler Ashton Langham
RIGHTS BEHIND BARS            SUSMAN GODFREY, L.L.P.
1800 M St. NW                 Suite 5100
Front 1 # 33821               Houston, TX 77002
Washington, DC 20033

February 5, 2025

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

### Plaintiff-Appellant

David Allen Haverkamp, also known as Bobbie Lee Haverkamp

### Counsel for Plaintiff-Appellant

Ace McLaurin Factor
Chanler Ashton Langham
SUSMAN GODFREY, L.L.P.
Suite 5100
Houston, TX 77002

D Dangaran
RIGHTS BEHIND BARS
1800 M St. NW
Front 1 # 33821
Washington, DC 20033

### Defendants-Appellees (appeared on Fifth Circuit Docket)

Lannette Linthicum
Owen Murray
Cynthia Jumper
Phillip Keiser
John Burruss
Michelle Erwin
Kris Coons
Bryan Edwards
Julia Hilner

**Counsel for Defendants-Appellees**

Eric Scott Abels
Office of the Texas Attorney General
Office of the Solicitor General
P.O. Box 12548 (MC-059)
Austin, TX 78711-2548

Michael J. Calb
Office of the Attorney General of Texas
Law Enforcement Defense Division
P.O. Box 12548
Austin, TX 78711-2548

Cameron Fraser
Office of the Texas Attorney General
P.O. Box 12548 (MC-059)
Austin, TX 78711-2548


Dated: February 5, 2025                    /s/*D Dangaran*
                                           D Dangaran
                                           Attorney of Record for Plaintiff-
                                           Appellant, Bobbie Lee Haverkamp

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant believes that oral argument would aid the decisional process in a case of such "apparent complexity." *Haverkamp v. Linthicum*, 6 F.4th 662, 672 (5th Cir. 2021) (Dennis, J., concurring). This appeal presents two primary issues: whether the named defendants are proper defendants under *Ex parte Young*, and whether the scope of *Ex parte Young* permits the injunctive relief sought.

First, the district court's order ignores Defendants' testimony—provided to the district court and relied upon by this Court—that two of the named defendants could provide all relief sought, as well as representations by Defendants' counsel to Plaintiff's appointed counsel providing the same information. Plaintiff presents both a judicial estoppel argument and a fact-based argument that the named Defendants are proper. Oral argument would aid this Court in assessing Plaintiff's legal and fact-based claims.

Second, the district court erred by weighing the merits while conducting the sovereign immunity analysis. The district court adopted an impermissibly narrow view of the scope of relief sought under *Ex parte Young*. Plaintiff requests oral argument to address Defendants' arguments, which became the district court's errors, and ensure the appeal is properly limited to the narrow sovereign immunity question at issue.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF CONTENTS ...................................................................... v

TABLE OF AUTHORITIES ............................................................... vii

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES .......................................................... 1

STATEMENT OF THE CASE .............................................................. 2

   I.  Preliminary Background ........................................................ 2

   II.  Factual Allegations in the Second Amended Complaint ................. 3

     A.  Ms. Haverkamp Was Denied Access to Prescribed Medical Care ............. 3

     B.  Defendants Were Responsible for Enforcing an Unconstitutional Prohibition on Sex-Reassignment Surgery ........................................ 5

   III.  Procedural History ........................................................... 7

   IV.  Relevant Facts Outside the Pleadings ..................................... 13

     A.  Defendants Represented to the District Court and to Plaintiff's Counsel that Plaintiff Had Named Defendants Who Could Provide All Relief Sought 14

     B.  Defendant Murray Enforced a Prohibition on Sex-Reassignment Surgery ................................................................................. 16

       i.  Dr. Meyer's Report ...................................................... 16

       ii.  Defendant Murray's Deposition Testimony ........................... 18

       iii.  Dr. Penn's Deposition Testimony ..................................... 19

     C.  Defendant Linthicum Enforced a Prohibition on Sex-Reassignment Surgery ................................................................................. 20

SUMMARY OF THE ARGUMENT ................................................... 21

ARGUMENT .................................................................................. 24

   I.  Standard of Review .......................................................... 24

   II.  Ms. Haverkamp Named Proper Defendants Under *Ex parte Young* ............. 24

     A.  Dr. Murray Is a Proper Defendant Because He Instructed Ms. Haverkamp's Clinicians Not to Refer Anyone for Sex-Reassignment Surgery ................................................................................. 25

i.   Dr. Murray is judicially estopped from asserting he is an improper defendant. .................................................................................................26

ii.   Dr. Murray is equitably estopped from asserting he is an improper defendant. .................................................................................................28

iii.   Dr. Murray enforced a blanket prohibition on sex-reassignment surgery, in violation of the Equal Protection Clause. .................................................30

B.   Dr. Linthicum Is a Proper Defendant Because She Enforced a Ban on Sex-Reassignment Surgery Under TDCJ Policy .....................................................33

III.   Ms. Haverkamp's Requested Relief Is Permissible Under *Ex parte Young* .................................................................................................35

A.   The District Court Erred by Reaching the Merits While Conducting Its *Ex parte Young* Analysis. ...................................................................36

B.   Ms. Haverkamp's Request to Enjoin Dr. Murray and Dr. Linthicum from Prohibiting Sex-Reassignment Surgery Is Within the Permissible Scope of *Ex parte Young* Relief.................................................................................39

i.   Assessing the proper scope of relief under Ex parte Young does not include conducting a merits analysis. .........................................................40

ii.   Ms. Haverkamp seeks an affirmative injunction that is within the permissible scope of relief of Ex parte Young.............................................40

iii.   Ms. Haverkamp seeks a negative injunction in the alternative. .............51

CONCLUSION .................................................................................................51

# TABLE OF AUTHORITIES

## Cases

*Ahrens v. Perot Sys. Corp.*, 205 F.3d 831 (5th Cir. 2000) .....................................27

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507 (5th Cir. 2017) ................25

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) ................................................24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................38

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024) ......................................38

*Brennan v. Stewart*, 834 F.2d 1248 (5th Cir. 1988) ...............................................41

*Calhoun v. Collier*, 78 F.4th 846 (5th Cir. 2023) ...................................................45

*Campbell v. Kallas*, No. 16-CV-261, 2020 WL 7230235 (W.D. Wis. Dec. 8, 2020) ........................................................................................................................49

*City of Austin v. Paxton*, 943 F.3d 993 (5th Cir. 2019), *cert denied* --- U.S. ----,141 S. Ct. 1047 (2021) ...............................................................................2, 10, 34

*Clark v. Quiros*, No. 3:19-CV-575, 2024 WL 3552472 (D. Conn. July 26, 2024).48

*Cordellioné v. Comm'r, Ind. Dep't of Corr.*, No. 3:23-CV-135, 2024 WL 4333152 (S.D. Ind. Sept. 17, 2024) ...............................................................46, 47, 48

*Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2017) .....................................41, 50

*Edmo v. Corizon, Inc.*, 935 F.3d 757 (9th Cir. 2019)..............................................49

*Ergo Sci., Inc. v. Martin*, 73 F.3d 595 (5th Cir. 1996)......................................26, 27

*Ex parte Young*, 209 U.S. 123 (1908) ....................................................................25

*Fano v. O'Neill*, 806 F.2d 1262 (5th Cir. 1987).....................................................29

*FDIC v. Meyer*, 510 U.S. 471 (1994).....................................................................38

*Flores v. Pompeo*, 936 F.3d 273 (5th Cir. 2019) ..............................................24, 33

*Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024).................................................45, 46

*Freedom from Religion Found. v. Abbott*, 955 F.3d 417 (5th Cir. 2020) ...............41

*Ganther v. Ingle*, 75 F.3d 207 (5th Cir. 1996) .......................................................45

*Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019) ........................................12, 39, 50

*Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460 (5th Cir. 2020) (en banc)..........................................................................................................44

*Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391 (5th Cir. 2003)...........................26

*Haverkamp v. Linthicum*, 6 F.4th 662 (5th Cir. 2021) ....................................iv, 2, 27

*Hope v. Harris*, 861 F. App'x 571 (5th Cir. 2021) ................................................41

*Iglesias v. Fed. Bureau of Prisons*, 598 F. Supp. 3d 689 (S.D. Ill. 2022)..............49

*In re Complaint of RLB Contracting, Inc.*, 773 F.3d 596 (5th Cir. 2014)..............13

*Kadel v. Folwell*, 100 F.4th 122 (4th Cir. 2024) ...................................................47

*Mangaroo v. Nelson*, 864 F.2d 1202 (5th Cir. 1989) .............................................28

*Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599 (5th Cir. 2008) .....................45

*McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407 (5th Cir. 2004).................36, 37

*Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024) .........................................32

*Miles v. Rich*, 576 F. App'x 394 (5th Cir. 2014).....................................................50

*Moody v. United States*, 783 F.2d 1244 (5th Cir. 1986) ...................................28, 29

*Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014)................................................34

*Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318 (5th Cir. 2008) ...........................41

*Norsworthy v. Beard*, 87 F. Supp. 3d 1164 (N.D. Cal. 2015), *appeal dismissed*, 802 F.3d 1090 (9th Cir. 2015) ....................................................................................49

*Ostrewich v. Tatum*, 72 F.4th 94 (5th Cir. 2023) ....................................................32

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ........................37

*Richardson v. Secretary of State*, 978 F.3d 220 (5th Cir. 2020) ................39, 43, 44

*Soneeya v. Spencer*, 851 F. Supp. 2d 228 (D. Mass. 2012) ...................................49

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)..................................38

*Stevenson v. Toce*, 113 F.4th 494 (5th Cir. 2024) ..................................................50

*Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669 (5th Cir. 2022) ...........................32

*Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020)..................25, 32, 34

*Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir. 1982).................................................2

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002).35, 36, 38, 40, 50

*Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724 (5th Cir. 2019)....................38

*Williams ex rel. J.E. v. Reeves*, 954 F.3d 729 (5th Cir. 2020)....................35, 36, 40

*Zayre-Brown v. N.C. Dep't of Pub. Safety*, No. 3:22-CV-191, 2024 WL 1641795 (W.D.N.C. Apr. 16, 2024), *appeal dismissed sub nom. Zayre-Brown v. N.C. Dep't of Adult Corr.*, No. 24-6477, 2024 WL 4925046 (4th Cir. Nov. 25, 2024) ...............................................................................................................................49

**Statutes**

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. § 1331 .......................................................................................................1

**Other Authorities**

Am. Psych. Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* (5th ed. 2013) ........................................................................................................................4

Complaint, *Clark v. Quiros*, No. 3:19-CV-575 (D. Conn. Apr. 17, 2019) ............48

**Treatises**

17A James W. Moore et al., *Moore's Federal Practice – Civil* (3d ed. 2024) .......25

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331. Eleventh Amendment state sovereign immunity did not deprive the district court of jurisdiction because the *Ex parte Young* exception applied to Defendants' conduct, which Plaintiff Bobbie Lee Haverkamp alleged violated the Constitution. This Court has jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

I.     Whether Ms. Haverkamp named the proper defendants in her injunctive relief claims when counsel for State Defendants informed Plaintiff's counsel and the district court that the named Defendants, including Defendant Dr. Owen Murray specifically, would be able to provide all of Ms. Haverkamp's requested relief; Ms. Haverkamp's medical provider testified that Defendant Murray directed him not to refer Ms. Haverkamp for sex-reassignment surgery; and Defendant Dr. Lanette Linthicum made multiple public statements in her official capacity declaring that sex-reassignment surgery could not be provided under state policy.

II.     Whether Ms. Haverkamp's request for the district court to enjoin State Defendants from implementing state policy G-51.11 in a manner that prohibits one type of medical care only for transgender individuals, in an alleged violation of the Equal Protection Clause of the Fourteenth Amendment, states a permissible request for prospective relief under *Ex parte Young*.

## STATEMENT OF THE CASE

### I.    Preliminary Background

This is the second time this case has been before this Court. In 2020, the district court rejected Defendants' sovereign immunity arguments in their joint motion to dismiss. ROA.1728 –30. Defendants appealed, and this Court vacated and remanded, "conclud[ing] that Haverkamp's operative complaint does not adequately plead that Defendants have a 'sufficient connection [to] the enforcement of the challenged act.'" *Haverkamp v. Linthicum*, 6 F.4th 662, 672 (5th Cir. 2021) ("*Haverkamp I*") (quoting *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019), *cert denied* --- U.S. ----,141 S. Ct. 1047 (2021)). Writing separately, Judge Dennis encouraged the district court to "consider granting leave to amend" for Ms. Haverkamp to cure the defect in the operative complaint: her "failure to sufficiently connect these Defendants with the enforcement of any assertedly unconstitutional policies or decisions." *Id.* (Dennis, J., specially concurring). Judge Dennis also "observe[d] that, given the apparent complexity of this case, it would be wholly reasonable for the [district] court to conclude that appointment of counsel 'would advance the proper administration of justice.'" *Id.* (quoting *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

On remand, Judge Hilda G. Tagle appointed counsel, ROA.2318, then later recused herself, ROA.2342. The case was reassigned to Judge Drew B. Tipton,

ROA.2343, who referred the case to Magistrate Judge Julie K. Hampton, ROA.2344. Judge Hampton ordered Plaintiff to file a second amended complaint. ROA.2351. Plaintiff provides the background of the *new* operative complaint in full. After Plaintiff filed the Second Amended Complaint, ROA.2365, the parties conducted discovery, including written discovery and several depositions, regarding the proper parties under *Ex parte Young*, and served expert reports, including one by Haverkamp's previous treating physician Dr. Walter Meyer. ROA.4227.

## II.    Factual Allegations in the Second Amended Complaint

### A. Ms. Haverkamp Was Denied Access to Prescribed Medical Care

Bobbie Lee Haverkamp is a transgender woman incarcerated by the Texas Department of Criminal Justice ("TDCJ") in a men's prison. ROA.2365 ¶ 1, ROA.2366 ¶ 6. TDCJ contracted with the University of Texas Medical Branch ("UTMB") to provide medical and psychiatric services in TDCJ prisons. ROA.2369 ¶ 14. UTMB provides medical care to Ms. Haverkamp and all those in her unit. *See* ROA.2366 ¶ 6, ROA.2370 ¶ 21. UTMB's responsibilities include making referrals to specialists. ROA.2370 ¶ 21.

Ms. Haverkamp was diagnosed with gender identity disorder in 2013. ROA.2373 ¶ 30. Defendants subsequently substituted the label "Gender Dysphoria" for the former "Gender Identity Disorder." ROA.2373 ¶ 30 n.5. Gender dysphoria is the distress that may accompany the incongruence between one's experienced

gender and one's assigned gender. ROA.2373 ¶ 30 n.5 (quoting Am. Psych. Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 451 (5th ed. 2013)). A doctor at UTMB's gender dysphoria clinic, Dr. Walter Meyer, examined Ms. Haverkamp in October 2014. ROA.2373 ¶ 31. Dr. Meyer prescribed her with a twelve-month course of estradiol, a feminizing hormone therapy, and referred her for gender-reassignment surgery[1] after one year of hormone therapy. ROA.2373 ¶ 31. Dr. Meyer "confirmed that surgery was available to Ms. Haverkamp." ROA.2373 ¶ 31. Ms. Haverkamp requested surgery at the earliest possible time. ROA.2373 ¶ 32. Six months later, Dr. Meyer reaffirmed that Ms. Haverkamp needed to take estradiol for at least a year before she would be considered eligible for surgery. ROA.2373 ¶ 33.

After more than a year on estradiol, in December 2015, Dr. Meyer increased her estrogen dosage to completely suppress her testosterone, and told Ms. Haverkamp she would need to be on the higher dosage of hormone therapy for at least another year. ROA.2373 ¶ 34. Ms. Haverkamp filed a grievance regarding this change of position, seeking confirmation that she would be able to receive gender-affirming surgery. ROA.2374 ¶ 35. TDCJ denied her grievance, using the same language as Dr. Meyer: "you must be on . . . higher estrogen for at least one year

---

[1] Throughout this brief and the record, sex-reassignment surgery, its abbreviation "SRS," gender-affirming surgery, and gender reassignment surgery are used interchangeably. Ms. Haverkamp has specified that she seeks a vaginoplasty. *See, e.g.*, ROA.2372 ¶¶ 26–28, ROA.2376 ¶ 44, ROA.2377 ¶ 46; ROA.2634.

before surgery can even be considered." ROA.2374 ¶ 35. Ms. Haverkamp filed a

Step Two grievance, which was denied, indicating that "specialists must follow the

[Correctional Managed Health Care Committee] Policy G-51.11." ROA.2374 ¶ 36;

*see* ROA.2376–77 ¶ 45 (alleging Dr. Linthicum oversees Step Two grievances and

thus denied Ms. Haverkamp's Step Two grievance).

At a follow-up appointment three months later, Dr. Meyer restated that Ms.

Haverkamp needed to remain on the higher estradiol dose for a year before surgery

could be considered. ROA.2375 ¶ 38. He also told her that "UTMB is going to have

to face the inevitable that gender reassignment surgery is going to happen."

ROA.2375 ¶ 38. Ms. Haverkamp sent Dr. Meyer a follow-up letter indicating her

understanding that she was "supposed to be able to talk to a surgeon that performs

gender surgery." ROA.2375 ¶ 38. But a few weeks later, UTMB changed course and

informed Ms. Haverkamp that she would not receive gender reassignment surgery.

ROA.2375 ¶ 39.

### B. Defendants Were Responsible for Enforcing an Unconstitutional Prohibition on Sex-Reassignment Surgery

Ms. Haverkamp filed suit under 42 U.S.C. § 1983 seeking declaratory and

prospective injunctive relief to redress the failure of TDCJ's medical staff to provide

her gender reassignment surgery. ROA.2366 ¶ 3.

First, Ms. Haverkamp sued Dr. Owen Murray, ROA.2367 ¶ 10, UTMB

Medical Director and former Senior Vice President of Offender Health Services for

the UTMB's Correctional Managed Care Division, ROA.2504; ROA.2572–73. Dr. Murray reviewed and adopted the "Inmate Health Services Plan" issued by the Committee's Joint Medical Directors Working Group. ROA.2367–68 ¶ 10. On information and belief, Dr. Murray, who was responsible for supervising Ms. Haverkamp's treatment at UTMB at the Gender Dysphoria Clinic and overseeing the diagnoses and recommendations made by UTMB practitioners, denied Dr. Meyers's recommended course of treatment for gender reassignment surgery after March 8, 2016. ROA.2376 ¶¶ 42–43.

Ms. Haverkamp also sued a number of doctors in their official capacities who were serving as members of the Correctional Managed Health Care Committee ("Committee"): Jeffrey Beeson, John Burruss, Robert Greenberg, Preston Johnson, Cynthia Johnson, Philip Keiser, Lannette Linthicum, Erin Wyrick, and Joe Perez. ROA.2366–67 ¶¶ 7–8. The Committee's membership has changed since Ms. Haverkamp filed suit. *See* ROA.2480. The most recent Committee members identified on the record include Defendants Burruss, Greenberg, Cynthia Johnson, Keiser, Linthicum, Perez, Edwards, Hilner, and Coons. *See* ROA.2480. This Committee promulgates policies governing medical care for people in TDCJ custody; enforces policy when there is a dispute between a treating physician and the TDCJ, including by investigating medical grievances; developed and approved a "managed health plan" that specifies care provided to incarcerated people; and

otherwise furnishes advice and provides medical expertise to assist TDCJ in implementing its policies. ROA.2369 ¶¶ 15–17. Ms. Haverkamp alleged that the Committee enforces their policy, G-51.11, in a manner that gender reassignment surgery is never allowed, even when medically necessary. ROA.2377–78 ¶ 51.

In this appeal, Ms. Haverkamp is not pursuing claims against the Committee Defendants, except for her separate claims against Defendant Dr. Linthicum, who served as Executive Director of the Committee, ROA.2367 ¶ 9, ROA.2369–70 ¶ 18, and who is TDCJ's Director of Health Services, ROA.2505. In the relevant time period when Ms. Haverkamp was denied treatment, Dr. Linthicum had the authority to administer, manage, and supervise the daily operations of the Committee's health care plan and is responsible for administering the Inmate Health Services Plan. ROA.2369 ¶ 18. Thus, Dr. Linthicum is responsible for implementing Policy G-51.11. The Committee is required to enforce compliance with the contract between TDCJ and the Committee. ROA.2370 ¶ 19. Ms. Haverkamp alleged that, in addition to her role on the Committee, Dr. Linthicum denied her Step Two grievance and thus denied her medically necessary care that other women can access. ROA.2376–77 ¶¶ 45, 48.

## III.    Procedural History

As stated above, this case was previously before this Court. *See supra* pp. 2–3. Plaintiff here focuses on the procedural history after the Second Amended

Complaint was filed—which took place after this Court's remand and the district court appointed counsel, as described in Part I. *See supra* pp. 2–3.[2]

On December 16, 2021, after a conference, the district court ordered Plaintiff to file a Second Amended Complaint, striking Plaintiff's *pro se* Second Amended Complaint. ROA.2351. Plaintiff's counsel filed Ms. Haverkamp's Second Amended Complaint—the operative complaint—on March 25, 2022. ROA.2379. All defendants answered in July 2022. *See* ROA.2411, 2424, 2436. The parties engaged in discovery over the next fifteen months. Defendants filed a motion for judgment on the pleadings, ROA.2498, and contemporaneously filed a motion for summary judgment, ROA.2520.[3]

Defendants filed their motion for judgment on the pleadings "pursuant to Federal Rule of Civil Procedure 12(c) challenging the Court's subject matter jurisdiction." ROA.2503, 2505. Defendants attached an affidavit, a transcript of Dr. Murray's deposition, Dr. Joseph Penn's expert report, and Ms. Haverkamp's grievance records as evidence. ROA.2505.

Defendants advanced three arguments that Ms. Haverkamp's suit was barred

---

[2] The full procedural history is in the district court's order. *See* ROA.2633–37.

[3] Because the Motion for Summary Judgment was denied as moot, ROA.2652, Ms. Haverkamp does not summarize Defendants' arguments therein or her responses in opposition. Ms. Haverkamp only notes that the summary judgment motion is the proper vehicle for conducting *any* inquiry into the merits of her Equal Protection Clause claim, as she argues below, *see infra* pp. 36–39.

by Eleventh Amendment sovereign immunity. *See* ROA.2507. First, they argued that Ms. "Haverkamp cannot show that any of the Defendants have the authority and duty to enforce a policy which denies [her] SRS, panties, or makeup," thus, they are "improper parties under *Ex parte Young* and their sovereign immunity remains intact." ROA.2508–09. They cited the allegations connecting the Committee members, ROA.2509, Dr. Linthicum, ROA.2509–11, and Dr. Murray, ROA.2511–12, to her denial of gender reassignment surgery. Second, they argued that an injunction ordering any of these Defendants to provide surgery "requires them to take affirmative, discretionary action in their official capacities" and therefore is impermissible under *Ex parte Young*. ROA.2512. Finally, Defendants addressed the merits of the Equal Protection Clause claim to argue that because there is no ongoing violation of federal law, Ms. Haverkamp failed to establish a claim under *Ex parte Young*. ROA.2513–14.[4] According to Defendants, these three reasons showed that Defendants retained sovereign immunity and deprived the district court of subject-matter jurisdiction. ROA.2503, 2505, 2508–09, 2516.

Plaintiff opposed both the Motion for Judgment on the Pleadings and the Motion for Summary Judgment, ROA.2567, 2584, filed a Rule 12(d) motion to

---

[4] Defendants also argued that Ms. Haverkamp lacks Article III standing. ROA.2514–15. This claim is not at issue because the district court did not reach it. *See* ROA.2652. Ms. Haverkamp does not appeal the district court's mootness decision regarding her bra and long hair pass. ROA.2640–42. Further, she does not appeal her requests for panties and cosmetics.

convert the motion for judgment on the pleadings to a motion for summary judgment, ROA.2568–69,[5] and filed sur-replies addressing the Rule 12(c) motion and the motion for summary judgment, ROA.2611–17, 2618–24.

For the same reasons discussed below at pp. 24–35, Ms. Haverkamp argued that Defendants were proper defendants under *Ex parte Young* because "[t]aking an 'active role' in enforcing state policy or 'compulsion or constraint' pursuant to state policy'" alleges an ongoing violation of federal law. *See* ROA.2571 (quoting *Paxton*, 943 F.3d at 999). First, Ms. Haverkamp presented an email from Defendants' counsel indicating Dr. Murray and the other Defendants named in the Second Amended Complaint "have the authority to provide all of the relief sought through this lawsuit." ROA.2572; *see* ROA.4215–19.

Second, Ms. Haverkamp presented a report by her former gender dysphoria clinician at UTMB's gender dysphoria clinic, Dr. Meyer, who testified that Dr. Murray, who at all relevant times was responsible for overseeing the UTMB gender dysphoria clinic and providing treatment to transgender inmates, instructed Dr. Meyer to not refer surgery as a treatment for gender dysphoria in any instance. *See* ROA.2574–75; ROA.4253–55. Ms. Haverkamp also presented Dr. Murray's deposition testimony, in Dr. Murray's capacity as a 30(b)(6) corporate representative

---

[5] The district court did not address the motion to convert. *See* ROA.2625. Ms. Haverkamp does not press the issue on appeal and therefore does not summarize those arguments here.

for UTMB and TDCJ, in which Dr. Murray described his and Dr. Linthicum's "authority" to approve all requests for surgery. ROA.2574; ROA.4446 at 47. Taking all this evidence into consideration, Ms. Haverkamp argued that Dr. Murray enforced a blanket prohibition on surgery. *See* ROA.2574–75.

As to Dr. Linthicum, Ms. Haverkamp established her involvement in decisions regarding sex-reassignment surgery based on the same binding 30(b)(6) corporate representative testimony on behalf of TDCJ and UTMB, ROA.2574–75, and presented emails written by Dr. Linthicum making official statements that "[g]ender reassignment surgery . . . is not currently covered in the TDCJ offender health care plan," ROA.2576; *see* ROA.4643. Finally, Ms. Haverkamp argued that her relief is within the scope of *Ex parte Young* because her injunction sought "to ensure that state officers comply with federal law" by providing "constitutionally mandated medical care." ROA.2581.

The parties filed reply and sur-reply briefs addressing the various legal issues. For the first time in their reply brief, Defendants attempted to recant their counsel's statement that Dr. Murray and the other named Defendants "have the [authority] to provide all of the relief sought through this lawsuit." ROA.2605 (quoting ROA.2572). Defendants argued that neither Dr. Murray nor Dr. Linthicum ever took action against Ms. Haverkamp's requested care. *See* ROA.2605–07. Plaintiff replied

that "Defendants should be estopped from now arguing" that Dr. Murray does not have the authority to provide all relief sought through the lawsuit. ROA.2612.

The district court granted Defendants' motion for judgment on the pleadings and denied Defendants' motion for summary judgment as moot. ROA.2626. The district court held that Defendants "retain their sovereign immunity under *Ex parte Young*." ROA.2651. First, the district court dismissed claims against the Committee members because the Second Amended Complaint did not prove the Committee members had "the power to enforce the policies [they] promulgate[]." ROA.2646.[6] Next, the district court dismissed claims against Dr. Linthicum because her supervisory role did not establish her "involvement in the investigation or the denial of [Ms. Haverkamp's] grievance" seeking sex-reassignment surgery. ROA.2647.

The district court did not decide whether Dr. Murray was a proper defendant for relief. *See* ROA.2648 ("The Court need not resolve the issue of whether Dr. Murray . . . had the authority to approve Haverkamp for [surgery]."). Rather, the district court determined that "[e]ven if Dr. Murray does" have the authority to approve Ms. Haverkamp's surgery, "the relief requested is not permitted under the *Ex parte Young* exception." ROA.2648–49. Specifically, the district court agreed with Defendants that in light of *Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019), male-to-female sex reassignment surgery is a "highly discretionary decision" such

---

[6] Ms. Haverkamp does not appeal the dismissal of the committee members.

that "an injunction requiring Dr. Murray or medical providers under his direction to perform [it] would impose upon their medical discretion in a manner that *Ex parte Young* prohibits." ROA.2648–49. Thus, the district court held that "Dr. Murray retains sovereign immunity." ROA.2650. Finally, the district court held that the Second Amended Complaint did not show a connection between Defendants and the security policies that led to the denial of Ms. Haverkamp's undergarments and makeup requests. ROA.2651.[7] The district court dismissed the case for lack of subject-matter jurisdiction. *See* ROA.2652.

The district court emphasized that "[i]t would be improper to opine on Haverkamp's equal-protection claim, Article III standing, or the propriety of an injunction under the PLRA in light of the Court's sovereign-immunity holdings." ROA.2652. The district court entered final judgment on September 23, 2024. ROA.2653. Ms. Haverkamp timely appealed on October 23, 2024. ROA.2654.

## IV.    Relevant Facts Outside the Pleadings

Because the district court based its ruling on subject-matter jurisdiction only, the district court considered evidence outside the pleadings.[8] *See* ROA.2626–33, 2638–39, 2647–49. Therefore, Plaintiff here presents relevant evidence outside the

---

[7] Ms. Haverkamp does not appeal the denial of these items.

[8] "On issues involving jurisdiction, the district court may consider evidence outside the pleadings and resolve factual disputes." *In re Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 601 (5th Cir. 2014), *overruled on other grounds as recognized by In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 790 (5th Cir. 2021).

pleadings, which Plaintiff also presented to the district court and which is included in the Record on Appeal, to guide this Court's review of the record.

### A. Defendants Represented to the District Court and to Plaintiff's Counsel that Plaintiff Had Named Defendants Who Could Provide All Relief Sought

The record contains an order entered before the operative complaint was filed, which indicated the district court's understanding, based on Defendants' representations, that Dr. Murray is a proper defendant. The magistrate judge issued a report and recommendation stating that "[d]uring the litigation of this case, the undersigned was advised that the appropriate defendants were Dr. Owen Murray from [UTMB] and the principal members of the Correctional Managed Health Care (CMHC) committee." ROA 1289–90. The magistrate judge had "issued an order directing Plaintiff to show cause why Dr. Penn should not be dismissed from this action without prejudice as the proper defendants have been identified." ROA.1290 (citing ROA.732). "Plaintiff responded that it would be premature to dismiss Dr. Penn who had presented himself as an accountable party." ROA.1290 (citing ROA.915–17). The magistrate judge continued: "Plaintiff acknowledged, however, that Dr. Murray and the CMHC committee members are the proper defendants in this case." ROA.1290. The magistrate judge concluded: "Dr. Penn should be dismissed from this action as the appropriate defendants capable of providing Plaintiff [her] requested relief have been identified." ROA.1290–91. Defendants did

not object, and the district court entered an order dismissing Dr. Penn from the complaint based on representations by Defendants that "other appropriate defendants capable of providing Plaintiff's requested relief have been identified in the amended complaint." ROA.1384.

Defendants' counsel took additional litigation positions based on the same grounds provided to and adopted by the district court. On May 11, 2023, Plaintiff's counsel, after taking the 30(b)(6) deposition of Defendant Murray, asked Defendants' counsel: "Based on Dr. Murray's recent testimony that Dr. Penn has primary responsibility for managing the Gender Dysphoria clinic and would be responsible for reviewing any treatment recommendation, are Defendants opposed to my re-addition of Dr. Penn as a defendant?" ROA.4219. On May 16, 2023, Defendants' counsel responded:

> We oppose re-adding Dr. Penn as a defendant. We also believe it is unnecessary from Plaintiff's perspective. Dr. Murray is Dr. Penn's superior and, along with the other named Defendants, has the authority to provide all of the relief sought through this lawsuit. In other words, if an injunction were to be issued against Dr. Murray in his official capacity, he and the other named Defendants would have the power to ensure that the terms of the injunction were satisfied, including by delegating tasks to Dr. Penn, if necessary.

ROA.4219. The parties proceeded to take additional depositions and conduct additional discovery based on that representation regarding the appropriate parties.

**B. Defendant Murray Enforced a Prohibition on Sex-Reassignment Surgery**

The district court's order presented a disputed fact issue relevant to Ms. Haverkamp's claims against Defendant Murray, but did not resolve that disputed fact issue. *See* ROA.2647–48.

### i. Dr. Meyer's Report

Plaintiff's expert Dr. Walter J. Meyer III, who had previously treated Haverkamp at UTMB's gender dysphoria clinic, ROA.4227 ¶ 2, submitted an August 18, 2023 report, which Ms. Haverkamp attached to her opposition to Defendants' motion for judgment on the pleadings. ROA.4224. Dr. Meyer included the following expert opinions in his report:

- "TDCJ and UTMB have denied Haverkamp's many requests for sex-reassignment surgery as a treatment for Gender Dysphoria and have denied Haverkamp medically necessary treatment." ROA.4229 ¶ 22.

- "TDCJ inmates cannot receive surgery to change their sex." ROA.4229 ¶ 23.

- "Gender Dysphoria consultants [in UTMB's Gender Dysphoria Specialty Clinic] were prohibited from recommending or referring any inmate for sex-reassignment surgery as a treatment for Gender Dysphoria." ROA.4229 ¶ 24.

- "UTMB and TDCJ provide vaginoplasty surgery as a medically necessary treatment for cisgender female inmates." ROA.4230.

- "Dr. Owen Murray is the provider at UTMB who has the authority to 'approve a provider's request for sex reassignment surgery' for an inmate experiencing Gender Dysphoria." ROA.4254 ¶ 90.

- "When I accepted the job at the Clinic, I was expressly told by at least Dr. Murray and Dr. Penn that 'this clinic would not offer surgery' as a treatment for Gender Dysphoria." ROA.4254 ¶ 93.

- "I was expressly told on several occasions by Dr. Penn, Dr. Murray, and others that we were not allowed to refer or recommend inmates for surgery as a treatment for Gender Dysphoria." ROA.4255 ¶ 93.

- "TDCJ and UTMB had a prohibition on sex-reassignment surgery as a treatment for Gender Dysphoria." ROA.4255 ¶ 93.

- "[T]he prohibition on referrals or recommendations for surgery was justified by the application of Policy G-51.11." ROA.4255 ¶ 93.

- "I have reviewed Dr. Penn's testimony in which he stated that I had the ability to recommend inmates for surgery. *See* [ROA.4537–38] at 212:17-213:9. I disagree with that testimony, and it is inconsistent with my experience at the UTMB/TDCJ Gender Dysphoria Specialty Clinic." ROA.4255 n.98.

Defendants chose to not take Dr. Meyer's deposition. Defendants also never filed any *Daubert* motion and never otherwise sought to limit or exclude Dr. Meyer's testimony. ROA.2619.

### ii. Defendant Murray's Deposition Testimony

During discovery, Plaintiff's counsel deposed Defendant Dr. Owen Murray as a 30(b)(6) witness for TDCJ and UTMB on various topics, including "TDCJ's denial of sex reassignment surgery as a medical treatment for Plaintiff." 4439 at 20:8–9. Defendant Murray is the Vice President of Inmate Health Services at UTMB, ROA.4440 at 24:6–7, and also serves as the medical director of UTMB Correctional Managed Care, ROA.4441–42, also known as the UTMB medical director, ROA.4455 at 83:3.

Defendant Murray made a number of statements relevant to the consideration of his status as a defendant as well as Ms. Haverkamp's claims. First, Defendant Murray testified that he must approve any referrals for sex-reassignment surgery as medically-necessary treatment "through a discussion with Dr. Linthicum." ROA.4446 at 45:7–47:15. Second, in direct conflict with Ms. Haverkamp's expert Dr. Meyer's testimony, Defendant Murray testified that Dr. Meyer could have sent a request or referral for surgery to Defendant Murray. ROA.4451 at 65–67. Finally, Defendant Murray agreed that "UTMB provides vaginoplasty surgery for biologically female inmates." ROA.4461 at 106:25-107:2.

### iii.  Dr. Penn's Deposition Testimony

Dr. Penn was another designated 30(b)(6) deposition witness for TDCJ and UTMB. ROA.4494 at 38:22–25. Dr. Penn oversees and directs UTMB's Gender Dysphoria Specialty Clinic. ROA.4495 at 42–43. Dr. Penn testified that Defendant Murray reviewed and revised the Inmate Health Services Plan, which set out the covered care for those in TDCJ custody. *See* ROA.4507 at 89–90. In direct conflict with Plaintiff's expert Dr. Meyer's testimony, Dr. Penn said that he "never once told [gender specialty clinicians] or advised them or insinuated any kind of prohibition" against sex-reassignment surgery. ROA.4513 at 116 at 22–23. Later in the deposition, Dr. Penn testified that gender dysphoria clinicians, such as Dr. Meyer, do not know, and had never been told, that they have the authority to refer people for surgery as a treatment for gender dysphoria. ROA.4539. Further, Dr. Penn testified that he, Defendant Murray, and Dr. Linthicum would "review" any referral for sex-reassignment surgery. ROA.4538 at 213–16.

Dr. Penn testified that he instructed Dr. Meyer and other clinicians at UTMB's gender specialty clinic that "[t]heir job is [to determine if patients] have gender dysphoria, and if so, what hormone treatment would be the best for them and to monitor the treatment." ROA.4528 at 176. He told Dr. Meyer in a meeting, "don't get out of your lane," when Dr. Meyer wrote that undergarments were medically necessary for a transgender patient. ROA.4529 at 177. In conflict with this

testimony, Dr. Penn testified that he "can't tell our gender dysphoria specialist what to do." ROA.4538 at 215.

Moreover, in conflict with Dr. Meyer's testimony, Dr. Penn said that Dr. Meyer "could have made the recommendation to medical" to provide Ms. Haverkamp surgery. ROA.4537 at 212. Dr. Penn agreed that a nurse practitioner in the gender dysphoria specialty clinic wrote in her medical notes that Ms. Haverkamp "continues to work with an attorney to pursue legal action regarding gender-affirming treatments" and "would like to receive additional therapies." ROA.4533 at 193.

## C. Defendant Linthicum Enforced a Prohibition on Sex-Reassignment Surgery

In September 2019, Defendant Linthicum made an official statement via email declaring that sex-reassignment surgery "is not a covered benefit under the Offender Health Care Plan." ROA.4638. And in November 2015, she stated in an email to Dr. Penn, with the intent to revise a public statement going to the press, that "[s]ex reassignment surgery is in a category of elective surgery and is currently not covered in the offender health care plan." ROA.4639–40. Dr. Penn, however, testified that sex reassignment surgery is not a prohibited procedure, ROA.4512 at 110, in direct conflict with Dr. Linthicum's written emails and a TDCJ "Fact Sheet," ROA.4519 at 137–40, ROA.4521–22 at 147–52, and Dr. Meyer's testimony based on his experience working at the Gender Dysphoria Clinic. Dr. Penn also testified that "Dr.

Linthicum's interpretation of the Offender Health Care Plan" is "that sex reassignment surgery is in a category of elective surgery and is currently not covered in the Offender Health Care Plan." ROA.4521 at 148.

Second, as stated above, Defendant Murray testified that he would need to approve any referrals for sex-reassignment surgery as medically necessary treatment, "through a discussion with Dr. Linthicum." ROA.4446 at 45:7–46:1. Dr. Penn agreed. He testified that he, Defendant Murray, and Defendant Linthicum would "review" any referral for sex-reassignment surgery. ROA.4538 at 213–14.

Dr. Penn's testimony further confirmed Dr. Linthicum's role. Dr. Penn agreed that the Inmate Health Services Plan contains contractual language that states: "No proceeds from this contract shall be used to pay for elective cosmetic surgery without prior written approval of the TDCJ division director for Health Services." ROA.4508 at 96. And then he testified that Dr. Linthicum had previously "give[n] verbal approval for elective cosmetic surgery." ROA.4508 at 96. Specifically, Dr. Penn testified that Dr. Linthicum approved breast reconstruction surgery for a cisgender woman after she had a mastectomy. ROA.4509 at 97.

## SUMMARY OF THE ARGUMENT

Bobbie Lee Haverkamp has sought sex-reassignment surgery since at least 2015. She has jumped through all the hoops put forth by her providers: her hormone levels have been in the normal female range since March 2016; she filed grievances

seeking a referral for surgery and appealed those grievances; she has continually requested sex-reassignment surgery at medical visits through at least October 2022; and her former treating physician, Dr. Meyer, recommends her for surgery and concluded that it is a medically necessary treatment for Ms. Haverkamp's diagnosed gender dysphoria. *See* ROA.4239–43. Nevertheless, her medical providers have not referred her to see a surgical specialist. She filed suit against Defendants Murray and Linthicum for enforcing a policy prohibiting her providers from referring her and other transgender patients to receive sex-reassignment surgery.

The district court erred by dismissing the claims against Defendants Murray and Linthicum based on sovereign immunity. Dr. Murray and Dr. Linthicum are proper defendants under *Ex parte Young*. First, Defendants' counsel represented to the district court and the parties that Dr. Murray was a proper defendant, and the district court and the parties relied on that representation. Defendants are therefore estopped from now arguing that Dr. Murray is an improper defendant for injunctive relief. In any event, Dr. Murray and Dr. Linthicum collaborate in reviewing policies and individual patients' portfolios when a patient is referred for a surgery.

Ms. Haverkamp has alleged, and the evidence confirms, that Dr. Murray instructed his subordinates that they were not permitted to refer transgender patients for sex-reassignment surgery. And Dr. Linthicum has stated that view in official statements to the press and in a TDCJ "Fact Sheet." The Inmate Health Care Plan

shows that Dr. Linthicum has decisionmaking authority over whether elective surgeries will be provided. Because Dr. Linthicum has determined that sex-reassignment surgery is elective and has stated numerous times that sex-reassignment surgery is not permitted, covered, or provided—and because she works with Dr. Murray closely when these requests arise—the evidence shows that, alongside Dr. Murray, Dr. Linthicum enforces this policy in a way that prohibits Ms. Haverkamp from accessing sex-reassignment surgery, in an alleged violation of the Equal Protection Clause. Thus, Dr. Linthicum's sovereign immunity is waived.

When analyzing the proper scope of relief under *Ex parte Young*, any inquiry into the merits is improper. The district court erred by considering the merits of Ms. Haverkamp's Equal Protection Clause claim rather than assessing her claim under the required elements of *Ex parte Young*: 1) Ms. Haverkamp sued state officers acting in their official capacities, 2) she sought prospective injunctive relief to redress ongoing conduct, and 3) she alleged a violation of federal, not state, law. Her claim is within the proper scope of *Ex parte Young* relief because an injunction ordering Defendants to provide medical services without undue discrimination does not fall outside the permissible scope of relief.

## ARGUMENT

### I.     Standard of Review

This Court reviews the grant of a Rule 12(c) motion for judgment on the pleadings *de novo*. *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023).

When "considering a challenge to subject matter jurisdiction, the district court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (cleaned up). "A district court may dispose of a motion to dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (cleaned up). This Court is "deferential to the district court's jurisdictional findings of fact, which [this Court] review[s] for clear error." *Id.*

### II.     Ms. Haverkamp Named Proper Defendants Under *Ex parte Young*

Dr. Owen Murray, in his official capacity as Vice President of Inmate Health Services at UTMB and the UTMB Correctional Managed Health Care Medical Director, and Dr. Lannette Linthicum, in her official capacity as TDCJ Medical Director, are proper parties under *Ex parte Young*.

The district court held that Defendants "retain their sovereign immunity under *Ex parte Young*." ROA.2651. The district court did not decide whether Dr. Murray

was a proper defendant regarding the relief requested. *See* ROA.2648. And the district court dismissed Ms. Haverkamp's claims against Dr. Linthicum because it found Ms. Haverkamp did not prove Dr. Linthicum's involvement in denying Ms. Haverkamp's request for sex-reassignment surgery. *See* ROA.2647.

When alleging a claim under *Ex parte Young*, there must be a "special relation" between the state official being sued and the challenged action. *Ex parte Young*, 209 U.S. 123, 157 (1908). That is, the plaintiff must plausibly allege that the defendant has "a measure of proximity to and responsibility for the challenged state action," such that enjoining that defendant will effectively resolve the claim. 17A James W. Moore et al., *Moore's Federal Practice – Civil* § 123.40 (3d ed. 2024). In short, "[t]o be sued, state officials must 'have some connection to the state law's enforcement.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 517 (5th Cir. 2017) (further quotation marks omitted)). Dr. Murray and Dr. Linthicum are both proper defendants under *Ex parte Young*.

### A. Dr. Murray Is a Proper Defendant Because He Instructed Ms. Haverkamp's Clinicians Not to Refer Anyone for Sex-Reassignment Surgery

The district court did not decide whether Dr. Murray is a proper defendant, nor did it issue any judicial findings of fact resolving the disputed facts on the record regarding Dr. Murray. *See* ROA.2647–48.

Importantly, the district court did not address Plaintiff's claim that Defendants were estopped from arguing that Dr. Murray was an improper defendant. *See* ROA.2572–73 (making the argument). The record reveals that Defendants made representations to the district court on this point, which the district court relied upon in dismissing a former defendant, Dr. Penn. *See* ROA.1289–91, 1384. Moreover, Defendants' counsel sent an email opposing Plaintiff's counsel request to re-add Dr. Penn as a defendant because the already-named defendants were sufficient, dissuading Plaintiff's counsel from moving to amend to fix any problem by insisting that there was not one. *See* ROA.4219 (email in which counsel made the representation); ROA.2612 (arguing in sur-reply that "Defendants should be estopped").

On its *de novo* review, this Court should hold that Dr. Murray is a proper defendant. Alternatively, this Court should vacate and remand with instructions to resolve all disputed facts and determine whether Dr. Murray is a proper defendant.

### i. Dr. Murray is judicially estopped from asserting he is an improper defendant.

"Judicial estoppel 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quoting *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996)). "In this Circuit, 'two bases for judicial estoppel' must be satisfied before a party can be estopped.

First, it must be shown that 'the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position.'" *Id.* (alteration in original) (quoting *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000)).

Ms. Haverkamp satisfies both requirements. Defendants argued for the first time in their motion for judgment on the pleadings that Dr. Murray—who was not an appellant in *Haverkamp I*—was an improper defendant under *Ex parte Young*. ROA.2511–12. This position is clearly inconsistent with Defendants' prior position in these proceedings, which Defendants convinced the court to adopt. In *Haverkamp I*, this Court discussed the relevant procedural history as to Dr. Murray in detail. *See* 6 F.4th at 666–67 & 668 n.4. This Court explained that Defendants' counsel stated at a hearing that "in the event Plaintiff only seeks gender reassignment surgery, the appropriate defendant would be Dr. Owen Murray." *Id.* at 666. Relying "on the State's representations, the magistrate judge ordered Haverkamp to file an amended complaint and proposed that Haverkamp 'name Dr. Murray.'" *Id.* This Court further described that "the district court ordered service of Haverkamp's operative complaint on Dr. Murray, whom the State earlier identified as the proper defendant if Haverkamp were seeking sex-reassignment surgery." *Id.* at 667.

The district court was convinced by Defendants to agree with their previous position, taking judicial action based on their statements. The district court dismissed

Dr. Penn from the complaint based on representations by Defendants that "other appropriate defendants capable of providing Plaintiff's requested relief have been identified in the amended complaint." ROA 1384. The district court adopted the magistrate judge's report and recommendation, *id.*, which was based on the magistrate judge being "advised" that Dr. Murray was the "proper," "appropriate" defendant. ROA.1290–91.

Defendant's new position—that Dr. Murray is not a proper Defendant—thus violates the principles of judicial estoppel. This Court should reverse and hold that Dr. Murray is a proper defendant under *Ex parte Young*.

### ii. *Dr. Murray is equitably estopped from asserting he is an improper defendant.*

This Court allows equitable estoppel claims to lie against state governments as well as private parties. *See Mangaroo v. Nelson*, 864 F.2d 1202, 1204–05 & 1205 n.3 (5th Cir. 1989). "To invoke equitable estoppel against a private party, a litigant must establish the four traditional common-law elements: (1) that the party to be estopped was aware of the facts; (2) that the party to be estopped intended his act or omission to be acted upon; (3) that the party asserting estoppel did not have knowledge of the facts; and (4) that the party asserting estoppel reasonably relied on the conduct of the other to his substantial injury." *Id.* at 1204 (quoting *Moody v. United States*, 783 F.2d 1244, 1246 (5th Cir. 1986)). To estop the government, the plaintiff asserting estoppel must "allege more than mere negligence, delay, inaction,

or failure to follow an internal agency guideline." *Id.* at 1204–05 (quoting *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir. 1987)).

When Plaintiff's counsel asked Defendants' counsel for their position as to re-adding Dr. Penn as a defendant, Defendants' counsel replied that Dr. Murray "has the authority to provide all of the relief sought through this lawsuit. In other words, if an injunction were to be issued against Dr. Murray in his official capacity, he . . . would have the power to ensure that the terms of the injunction were satisfied." ROA.4219. Defendants' counsel was aware of the facts because they represented the various defendants and were part of litigating the case from the outset. Defendants' counsel also intended for the statement to be acted upon, as he was disagreeing with Plaintiff's counsel's request to add a Defendant.

Plaintiff's counsel relied on these representations without knowing whether or not Dr. Murray truly had the ability to provide all relief. Persuaded by Defendants' counsel and in reliance on the statement that Dr. Murray "has the authority to provide all of the relief sought," Plaintiff's counsel decided not to amend the complaint. *See* ROA.2612 ("As explained in Plaintiff's Response, Plaintiff relied on Defendants' counsel's representation, did not file an amended complaint naming additional defendants, proceeded with discovery, and incurred substantial time and expenses based on the understanding from counsel that 'Dr. Murray . . . along with the other named Defendants, has the authority to provide all relief sought through this

lawsuit.'"). Such a representation by Defendants' counsel is far more than mere negligence; at worst, it shows an intent to game the system by persuading Plaintiff's counsel not to name a defendant when Plaintiff's counsel sought opposing party's positions before filing a motion to amend. This is precisely the type of conduct that equitable estoppel is designed to remedy.

### iii. Dr. Murray enforced a blanket prohibition on sex-reassignment surgery, in violation of the Equal Protection Clause.

Separate and apart from her judicial estoppel arguments, Ms. Haverkamp also argued before the district court that, "as a factual matter, Dr. Murray, as Vice President of Inmate Health Services at UTMB and the UTMB Correctional Managed Health Care Medical Director, is responsible for overseeing inmate medical care and enforcing the Policy that is causing Defendants' ongoing denial of Plaintiff's constitutional rights." ROA.2573. Ms. Haverkamp quoted Dr. Meyer's expert report, in which he stated that he "was expressly told on several occasions by . . . Dr. Murray . . . that [he was] not allowed to refer or recommend inmates for surgery as a treatment for Gender Dysphoria." ROA.2575 (quoting ROA.4254–55 ¶ 93). Dr. Meyer was treating Ms. Haverkamp at the time he understood this to be the operative policy at his clinic. *See* ROA.4255 ¶ 93 ("While I treated inmates at the UTMB/TDCJ Gender Dysphoria Specialty Clinic from 2013 through 2018, I and the other Gender Dysphoria Specialty Clinic consultants were prohibited from recommending or referring any inmate for sex-reassignment surgery as a treatment

for Gender Dysphoria."). In September 2015, for instance, Dr. Meyer told Ms. Haverkamp that "TDCJ would not pay for sex-reassignment surgery." ROA.4240. Defendants agreed in Dr. Penn's 30(b)(6) deposition that Ms. Haverkamp requested surgery from Dr. Meyer, ROA.4530 at 184:21–24, and acknowledged that a nurse practitioner wrote a medical note in 2021 indicating that Ms. Haverkamp "continues to work with an attorney to pursue legal action regarding gender-affirming treatments" and "would like to receive additional therapies." ROA.4533 at 193.

Because Dr. Murray prohibited the Gender Dysphoria Specialty Clinic consultants from recommending or referring Ms. Haverkamp for sex-reassignment surgery, Ms. Haverkamp was not referred for surgery, despite her physician, Dr. Meyer, stating before that surgery would be available to her. *See* ROA.4256. She did not receive a referral to surgery despite the fact that she long surpassed the one-year durational recommendation for being in the female hormone range before receiving sex-reassignment surgery. *See* ROA.4240–43 (noting Ms. Haverkamp's testosterone levels were within the female range in March 2016, October 2021, and April 2022). She had also made her interest in gender-affirming surgery known to her providers over the years through her self-reports at evaluations as well as through grievances, all of which were denied. *See* ROA.4240, 4255–56. As Dr. Meyer testified, "TDCJ inmates cannot receive surgery to change their sex," at the direction of Dr. Murray. ROA.4229, 4254, 4255. Dr. Murray's directive enforced a prohibitive ban on sex-

reassignment surgery and was therefore sufficiently connected to the constitutional violation to waive his sovereign immunity. *See Ostrewich v. Tatum*, 72 F.4th 94, 100 (5th Cir. 2023). Accordingly, Dr. Murray meets the "requisite connection" under *Ex parte Young* through his "compulsion" in enforcing the policy ban through his directive to Dr. Meyer. *Tex. Democratic Party*, 961 F.3d at 401 (citations omitted).

Dr. Murray denies that he enforced a prohibition on surgery referrals, in direct conflict with Dr. Meyer's testimony. ROA.4451 at 65–67. But Dr. Meyer's testimony described above shows otherwise. Further, Dr. Penn agreed that the gender specialty clinicians "don't know that they have the authority to refer inmates for surgery as a treatment for gender dysphoria." ROA.4539 at 220. It is enough that Dr. Murray, "through [his] conduct, 'compel[s] or constrain[s persons] to obey" a practice called into question by Ms. Haverkamp. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)).

Given that Dr. Murray's testimony directly conflicts with Dr. Meyer's testimony,[9] if this Court agrees with Ms. Haverkamp's argument below, *see infra*

---

[9] Dr. Murray's testimony is also internally inconsistent. Despite Dr. Murray's and Dr. Penn's testimony that they do not intervene in the care the Gender Dysphoria Specialty Clinic consultants provide, *see* ROA.4538 at 215, Dr. Murray testified that he and Dr. Linthicum must approve any referrals for sex-reassignment surgery before they are submitted to the medical department, *see* ROA.4446 at 45:7–46:1. Dr. Penn offered the same contradicting testimony. *See* ROA.4488 at 13–14 (stating he, Dr. Murray, and Dr. Linthicum would "review" any referral for sex-reassignment

pp. 35–51, then it should vacate and remand for the district court to resolve the disputed facts regarding the appropriate defendants before making its final sovereign immunity determination. *See Flores*, 936 F.3d at 276.

### B. Dr. Linthicum Is a Proper Defendant Because She Enforced a Ban on Sex-Reassignment Surgery Under TDCJ Policy

In reviewing Defendant Linthicum's status as a proper party under *Ex parte Young*, the district court erred by not assessing the full pleadings and facts in the record. Ms. Haverkamp alleged that at the relevant time period when Ms. Haverkamp was denied treatment, Dr. Linthicum had the authority to administer, manage, and supervise the daily operations of the Committee's health care plan. ROA.2369 ¶ 18.[10] The evidence also confirmed that Dr. Linthicum is the TDCJ Medical Director and is responsible for all decisions regarding sex-reassignment surgery, including whether a particular medical treatment is medically necessary or elective, and administering the TDCJ-UTMB Inmate Health Services Plan and Contract.

---

surgery). Such a review before a request is made to the medical providers is precisely the type of intervention that Dr. Murray disavowed.

[10] This factual allegation is undisputed. Defendants disputed Ms. Haverkamp's allegation that Dr. Linthicum denied Ms. Haverkamp's Step Two grievance and thus denied her medically necessary care that other women can access. ROA.2376–77 ¶¶ 45, 48; *see* ROA.2441 ¶¶ 45, 48 (denying allegations in Answer); ROA.2510–11 (arguing Dr. Linthicum did not respond to Haverkamp's March 3, 2016 grievance). Ms. Haverkamp does not advance the claim that the grievance ties Dr. Linthicum to Ms. Haverkamp's denial.

Dr. Linthicum's public statements and statements to her subordinates indicated her enforcement of a statewide prohibition on sex-reassignment surgery for people in TDCJ custody. *See* ROA.2576–77. Dr. Linthicum made official statements to the public and the press expressing the policy that sex-reassignment surgery "is not a covered benefit under the Offender Health Care Plan." ROA.4638; *see also* ROA.4639–40. Dr. Linthicum also approved such statements in a TDCJ "Fact Sheet," which states: "Inmates cannot receive surgery to change their sex, which would be considered elective and not medically necessary." ROA.4658. Such statements confirm that Dr. Linthicum, in her official capacity as medical director of TDCJ, enforced a policy banning such surgeries and announced that policy publicly. Dr. Linthicum enforced this policy in her "review" of any referral for sex-reassignment surgery. ROA.4538 at 213–14; *see also* ROA.4446 at 45:7–46:1. After all, "the bare minimum appears to be 'some scintilla' of affirmative action by the state official." *Tex. Democratic Party*, 961 F.3d at 401 (quoting *Paxton*, 943 F.3d at 1002). At the very least, Dr. Linthicum here showed "'a demonstrated willingness to exercise' [her] enforcement duty." *Id.* (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)).

Finally, the Inmate Health Service Plan states: "No proceeds from this contract shall be used to pay for elective cosmetic surgery without prior written approval of the TDCJ division director for Health Services." ROA.4508 at 96. Dr.

Linthicum had previously "give[n] verbal approval for elective cosmetic surgery." ROA.4508 at 96. Specifically, Dr. Penn testified that Dr. Linthicum approved breast reconstruction with implants for a cisgender woman after she had a mastectomy. ROA.4509 at 97. And yet, Dr. Linthicum stated numerous times that she would not permit sex-reassignment surgery. ROA.2576, 4638–40. These facts tie Dr. Linthicum to the challenged action in this case. Accordingly, the district court's finding that Dr. Linthicum is an improper defendant is clearly erroneous.

## III.   Ms. Haverkamp's Requested Relief Is Permissible Under *Ex parte Young*

This Court has recently laid out the "three basic elements of an *Ex parte Young* lawsuit." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). "The suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Id.* The relief sought must be equitable relief. *Id.*

When "determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotation marks omitted). Importantly, the Supreme Court has stressed that "whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* at 646.

**A. The District Court Erred by Reaching the Merits While Conducting Its *Ex parte Young* Analysis.**

In their motion for judgment on the pleadings, Defendants relied on an Equal Protection Clause merits argument to assert that there is no ongoing violation of federal law. ROA.2513–14. They also argued that an injunction seeking sex-reassignment surgery "requires them to take affirmative, discretionary action in their official capacities" and therefore is impermissible. ROA.2512. Defendants are wrong on both counts. And the district court erred by agreeing with Defendants. *See* ROA.2648–50 (conducting an analysis that erroneously looked to the merits when analyzing Dr. Murray's sovereign immunity). The district court's analysis extending *Gibson*'s Eighth Amendment holding to the Equal Protection Clause claim at hand is precisely the type of merits analysis that is not permitted when considering "whether suit lies under *Ex parte Young*." *Verizon*, 535 U.S. at 646. This Court should reverse on sovereign immunity grounds.

The case law is clear: analyzing whether sovereign immunity bars a claim does not depend on a merits analysis at all. *See Verizon*, 535 U.S. at 646. This Court has held that "there is 'no support' for the notion that 'a court must determine the validity of a plaintiff's cause of action in the course of deciding whether an *Ex parte Young* suit can proceed in the face of a state's Eleventh Amendment defense.'" *Williams*, 954 F.3d at 736 n.5 (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 415 (5th Cir. 2004)). So long as a plaintiff alleges forward-looking "relief for

what they allege to be defendants' ongoing violation of federal law," the relief "is the type of relief permitted under *Ex parte Young*." *Id.* at 738.

Ms. Haverkamp has done exactly that. She alleged that Defendants Murray and Linthicum prohibited her from being referred for sex-reassignment surgery through their enforcement of a policy ban. The Inmate Health Services Plan states: "No proceeds from this contract shall be used to pay for elective cosmetic surgery without prior written approval of the TDCJ division director for Health Services." ROA.4508 at 96. Dr. Linthicum made official statements indicating that sex-reassignment surgery shall not be covered. ROA.2576, ROA.4638–40. Dr. Murray explicitly instructed his staff at the Gender Dysphoria Specialty Clinic—the only TDCJ staff who can diagnose individuals with gender dysphoria pursuant to policy G-51.1, *see* ROA.3306—that they could not refer patients for sex-reassignment surgery, and has never told any clinician that they have the authority to recommend surgery as a treatment for gender dysphoria under that policy. *See* ROA.4255 at ¶ 93. Because Defendants Murray and Linthicum continue to refuse Ms. Haverkamp a referral for surgery, she challenges an ongoing violation. And she has raised claims of federal law violations, not state-law violations. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124–25 (1984). Ms. Haverkamp thus meets all elements of the *Ex parte Young* claim. Looking into the merits of her claim whatsoever—to

test their possibility, plausibility, or probability[11]—is invalid at this stage of the sovereign immunity analysis. *See Verizon*, 535 U.S. at 646. In order to reach the merits, the district court must address Defendants' motion for summary judgment.

Because a motion for judgment on the pleadings under Rule 12(c) is not a valid vehicle for challenging the merits of Ms. Haverkamp's claim, any merits dispute is not before this Court's review of the district court's order. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature."); *Book People, Inc. v. Wong*, 91 F.4th 318, 336 (5th Cir. 2024) ("Satisfied that we have jurisdiction, we now turn to the merits of the preliminary injunction."). Therefore, without addressing the merits of the underlying Equal Protection Clause claim whatsoever, this Court should vacate and remand.

---

[11] There is no inquiry into plausibility here, unlike in the Rule 12(b)(6) context, because Defendants have *not* alleged in their motion for judgment on the pleadings that Ms. Haverkamp failed to state a claim for relief; they argued *only* that the district court lacked subject-matter jurisdiction. *See* ROA.2503. Even if this Court were presented with a Rule 12(b)(6) motion, however—as it was in *Haverkamp I*—the plausibility standard does not require resolving the merits or finding a likelihood of success. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) ("[A] 'well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely." (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007))).

**B. Ms. Haverkamp's Request to Enjoin Dr. Murray and Dr. Linthicum from Prohibiting Sex-Reassignment Surgery Is Within the Permissible Scope of *Ex parte Young* Relief.**

All that is left is Defendants' argument that Ms. Haverkamp asks the district court to issue an injunction that falls outside the scope of relief available under *Ex parte Young*. *See* ROA.2512–13. The district court held that because ordering sex-reassignment surgery is a "highly discretionary decision," "an injunction requiring Dr. Murray or medical providers under his direction to perform [it] would impose upon their medical discretion in a manner that *Ex parte Young* prohibits." ROA.2648–49. The district court plucked out "factors" from Ms. Haverkamp's physical health to illustrate what "would impact the highly discretionary decision." ROA.2649. The district court made no mention of Dr. Meyer's unrebutted, unchallenged conflicting testimony addressing those factors, or Dr. Meyer's expert opinion that sex-reassignment surgery is medically necessary for Ms. Haverkamp. ROA.4229–30, ROA.4245.

Moreover, the district court cited this Court's Eighth Amendment case law that found a "'robust and substantial good faith disagreement dividing respected members of the expert medical community' about whether [sex-reassignment surgery] is medically necessary or beneficial for treating gender dysphoria." ROA.2649 (citing *Gibson*, 920 F.3d at 220). The district court also cited *Richardson v. Secretary of State*, 978 F.3d 220, 242 (5th Cir. 2020), for the broad principle that

"a court may not control an officer in the exercise of his discretion." ROA.2649 (cleaned up).

### i. *Assessing the proper scope of relief under* Ex parte Young *does not include conducting a merits analysis.*

First, the district court conflated the merits analysis of Ms. Haverkamp's Equal Protection Clause claim with the question of the proper scope of *Ex parte Young* relief. But as stated above, "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646. Discussing Ms. Haverkamp's health and individual risk factors, relying on *Gibson*'s discussion of the medical community's divide over the benefits of sex-reassignment surgery, and extending *Gibson*'s Eighth Amendment holding to the Equal Protection Clause claim at hand are all points of argument *for the merits analysis* of Ms. Haverkamp's claim. But because the district court did not reach Defendants' motion for summary judgment, the merits of Ms. Haverkamp's claim were not before the district court. In conducting a sovereign immunity analysis, the district court simply does not "determine the validity of a plaintiff's cause of action." *Williams*, 954 F.3d at 736 n.5.

### ii. *Ms. Haverkamp seeks an affirmative injunction that is within the permissible scope of relief of* Ex parte Young.

Ms. Haverkamp seeks medically necessary care that she has alleged is constitutionally mandated by the Equal Protection Clause. As a general matter, this

Court allows suits seeking injunctions in *Ex parte Young* cases to ensure that state officers comply with federal law. *See, e.g.*, *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 424 (5th Cir. 2020); *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 324 (5th Cir. 2008). Prisons are no exception. *See Hope v. Harris*, 861 F. App'x 571, 578 (5th Cir. 2021) ("[W]e note that generally all institutional litigation involving state prisons . . . is brought under the *Ex parte Young* exception. In fact, the exception is so well established in that context that such cases often do not even mention *Ex parte Young*." (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1252 n.6 (5th Cir. 1988) (cleaned up)).

Such compliance includes providing constitutionally mandated medical care. As Ms. Haverkamp argued below, ROA.2581, this Court's decision in *Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2017), which held that the "*Ex parte Young* exception applied" where the plaintiff alleged "that defendants violated his Eighth Amendment rights by failing to provide required hip surgery," is dispositive here. *Id.* at 137. *Delaughter* directly refutes Defendants' argument, adopted by the district court, that an affirmative injunction that requires defendants to provide a particular type of surgery should be barred at the outset under sovereign immunity.

In reply, Defendants attempted to distinguish *Delaughter* by arguing that the plaintiff there had already been referred by his prison medical provider to a specialist, who ordered the surgery that was later cancelled. ROA.2608. Defendants

argued that "by contrast, Haverkamp has not been referred to a specialist, much less cleared for surgery by that specialist." ROA.2608. But their argument concedes the point at issue: the fact that Ms. Haverkamp has not been referred to a specialist despite clear indications by medical providers, including Dr. Meyer and her providers in more recent years, *see* ROA.4238–43, is *itself* evidence of the prohibition Defendants have enforced. Dr. Meyer and his fellow clinicians in the Gender Dysphoria Specialty Clinic were explicitly instructed by Defendant Murray not to provide referrals for sex-reassignment surgery. ROA.4254–55. Dr. Murray himself testified in a 30(b)(6) deposition that no one had ever received a referral for sex-reassignment surgery, which is further circumstantial evidence of the ban. ROA.4453 at 76.

And even after this lawsuit was filed, after Dr. Penn and Dr. Linthicum discussed Ms. Haverkamp's care, they downplayed her need for surgery and even doubted her continued experience of gender dysphoria, *see* ROA.4530–31, despite the fact that in 2021 her treating physician stated Ms. Haverkamp "continued to experience dysphoria," ROA.4533 at 193. The fact that Defendants Murray and Linthicum have prevented Ms. Haverkamp from meeting a surgical specialist with expertise in gender dysphoria exhibits a discriminatory ban, particularly given Dr. Penn's testimony that Dr. Linthicum referred a cisgender woman to receive breast reconstruction surgery. ROA.4509 at 97.

For all these reasons, *Delaughter* is far more applicable to Ms. Haverkamp's case than *Richardson*. In *Richardson*, a voting rights case, plaintiffs challenged Texas's absentee-ballot system. 978 F.3d at 226. They "asked for an injunction requiring election officials to take various rapid affirmative steps to provide notice to voters whose ballots have been rejected, to loosen absentee voter-identification requirements, and to implement an elaborate and expedited process for challenges by voters with rejected ballots." *Id.* at 227. The district court issued an injunction that "gave the Secretary [of State] a menu of actions that she must take," including: "either issue an advisory to local election officials requiring them to follow the court's newly devised signature-verification and voter-notification procedures, or else promulgate an advisory requiring that officials cease rejecting ballots with mismatched signatures altogether;" and "take action against any election officials who fail to comply with the district court's newly minted procedures." *Id.* The Secretary appealed the injunction and moved for a stay, arguing the absentee-ballot procedures did not implicate plaintiffs' due process rights and other related due process merits claims. *Id.* at 228. The Secretary also raised a sovereign immunity defense, which this Court held would likely prevail. *See id.* at 241. She argued "that sovereign immunity bars the district court's injunction requiring that she issue particular advisories and take specific potential enforcement action against non-complying officials." *Id.*

This Court held that sovereign immunity applied in that case because the specific affirmative actions the district court's "sweeping order" required all fell into the Secretary's discretionary functions. *Id.* at 242. In dicta, *Richardson* stated that "[w]hether *Ex parte Young* bars *all* affirmative injunctions against an officer 'is an unsettled question.'" *Id.* (emphasis added) (quoting *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 472 n.21 (5th Cir. 2020) (en banc)). Defendants make much of this open question, but it does not offer any solid support for their asserted proposition that an affirmative injunction cannot impede on any discretionary functions of a state official.

This Court has long held that prison injunctions requiring affirmative actions by prison administrators do not offend sovereign immunity. *See, e.g.*, *Williams v. Edwards*, 547 F.2d 1206, 1209, 1212 (5th Cir. 1977) (allowing district court's injunctive order, which contained "a 15-page list of requirements concerning inmate protection, medical care, maintenance, repair, construction and safety, food and sanitation, racial discrimination and segregation, religious freedom, censorship of mail, conditions of punitive and administrative confinement and procedural due process," *id.* at 1209). The numerous opinions from this Court that have allowed prison injunctions to proceed even when they require affirmative actions by state defendants, holding sovereign immunity did not bar the injunctive relief, are consistent with the injunction sought here. *See, e.g.*, *Calhoun v. Collier*, 78 F.4th

846, 850–51 (5th Cir. 2023); *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 604–06 (5th Cir. 2008); *Ganther v. Ingle*, 75 F.3d 207, 210 (5th Cir. 1996). Ms. Haverkamp simply requests that the policymakers acting as medical gatekeepers here—Defendants Murray and Linthicum—comply with federal law by treating her medical needs as equal to the needs of others, by either issuing her the surgery she has sought since 2013—and has been physically eligible for since at least 2016—or by permitting her medical care providers to refer her to a surgeon. The scope of Ms. Haverkamp's requested relief looks much more similar to the relief sought in *Delaughter* and these other Fifth Circuit cases that have upheld prison-related injunctions.

Looking outside this circuit, Ms. Haverkamp's case also bears similarities to the Tenth Circuit's case, *Fowler v. Stitt*, 104 F.4th 770 (10th Cir. 2024). In *Fowler*, plaintiffs sought to amend their Oklahoma birth certificates with sex designations that reflected their gender identities, but were denied on the basis of a Governor's Executive Order prohibiting further amendments with that intent. *Id.* at 774–75. Plaintiffs sued under the Equal Protection Clause, alleging the Executive Order discriminated on the basis of their transgender status and sex. *Id.* at 775. Because plaintiffs sued state officials, Eleventh Amendment immunity was implicated. *See id.* at 781. The Tenth Circuit permitted Plaintiffs' relief sought, which included "[a]n order permanently enjoining Defendants and their agents from enforcing the Policy,"

"[a]n order directing Defendants to immediately provide Plaintiffs their amended birth certificates as requested," and "[a]n order directing Defendants to take any necessary and appropriate action to ensure that transgender people can obtain amended Oklahoma birth certificates that match their gender identity and do not include information that would disclose their transgender status." *Id.* at 782 (quotation marks omitted). Such actions are much more closely aligned to Ms. Haverkamp's requested relief than the novel actions ordered in *Richardson*. Everything awarded by the relief would be similar to the provision of public services the plaintiffs in *Fowler* and Ms. Haverkamp here could receive if they were not transgender. The relief does not call for the creation of any new policies or structural pathways to achieving the relief. The order simply requests lifting the discriminatory ban on otherwise commonly accessible programs or services: birth certificate amendments and surgical consultation referrals.

Outside of the Fifth Circuit, there have been numerous decisions granting injunctive relief of this precise scope. The most comparable case to Ms. Haverkamp's is *Cordellioné v. Commissioner, Indiana Department of Correction*, No. 3:23-CV-135, 2024 WL 4333152 (S.D. Ind. Sept. 17, 2024). Ms. Cordellioné, like Ms. Haverkamp, transitioned while incarcerated. *Id.* at *1. In prison, she was prescribed hormones, was permitted to purchase female items from the commissary, and was seen by mental health staff. *Id.* Once she started on hormones, she, like Ms.

Haverkamp, informed her medical providers informally and through grievances that her gender dysphoria continued and she felt she needed gender affirming surgery. *Id.* at *13. And like Ms. Haverkamp, her providers first told her that surgery would be available to her, but the prison later refused to refer her to a surgeon. *Id.* Like TDCJ, the Indiana Department of Corrections partially justified the denial by saying that she was too unwell to receive the surgery, pointing to comorbidities. *Id.* at *14; *cf.* ROA.3764 (discussing Ms. Haverkamp's health risk factors). *But see* ROA.4797- 98 (expert testimony determining surgery is both medically necessary for Ms. Haverkamp and viable despite her comorbidities).

Ms. Cordellioné sued the Commissioner of the Indiana Department of Corrections, requesting a preliminary injunction. *Cordellioné*, No. 3:23-CV-135, 2024 WL 4333152 at *20. The district court, rejecting the prison's purported basis for denying her the surgery, granted the injunction. *Id.* The district court found that: 1) despite Ms. Cordellioné's comorbidities, she was eligible for surgery; 2) surgery was a safe and effective treatment; 3) Ms. Cordellioné receiving surgery would neither pose a security risk nor impede with her rehabilitation. *Id.* at *15, *20. The district court held that the surgery denial—"textbook sex discrimination"—violated the Fourteenth Amendment's Equal Protection Clause. *Id.* at *19 (quoting *Kadel v. Folwell*, 100 F.4th 122, 153 (4th Cir. 2024)). Therefore, the court ordered the Indiana

Department of Corrections to provide Ms. Cordellioné with surgery "at the earliest opportunity." *Id.* at *21.

Another case from Connecticut is on point. In *Clark v. Quiros*, No. 3:19-CV-575, 2024 WL 3552472 (D. Conn. July 26, 2024), Ms. Clark asked for gender-affirming medical treatment. *Id.* at *8. The Connecticut DOC delayed in providing the necessary medical treatment, including an adequate dosage of hormone therapy. *Id.* at *8–13; *cf.* ROA.2392-94, 4857–58 (discussing the delays in providing Ms. Haverkamp with the necessary treatment). Because of the delay in providing the necessary medical care, Ms. Clark filed her lawsuit in 2019. Complaint, *Clark v. Quiros*, No. 3:19-CV-575 (D. Conn. Apr. 17, 2019). Like in Ms. Haverkamp's suit, a threshold issue was whether Eleventh Amendment sovereign immunity barred the claim. *Clark*, No. 3:19-CV-575, 2024 WL 3552472 at *17. The district court held that it did not. *Id.* Having resolved the immunity question, after a bench trial, the court granted Ms. Clark's injunction. *Id.* at *2. It did so despite the fact that since the case was filed, the Connecticut DOC began providing her with the proper hormone dosage and electrolysis—a necessary preparation for the surgery needed—and arranged a consultation with a surgeon. *Id.* at *12–13. The court held that "there is not a sufficient basis to conclude that Ms. Clark's gender dysphoria will be treated effectively without court intervention." *Id.* at *21.

*Cordellioné* and *Clark* comport with the majority trend in cases across the

country. Many federal courts are ordering Departments of Corrections to provide this surgery when medically necessary. *See, e.g.*, *Edmo v. Corizon, Inc.*, 935 F.3d 757, 767 (9th Cir. 2019) (affirming the district court's injunction requiring an Idaho prison to provide surgery); *Zayre-Brown v. N.C. Dep't of Pub. Safety*, No. 3:22-CV-191, 2024 WL 1641795, at *4 (W.D.N.C. Apr. 16, 2024), *appeal dismissed sub nom. Zayre-Brown v. N.C. Dep't of Adult Corr.*, No. 24-6477, 2024 WL 4925046 (4th Cir. Nov. 25, 2024) (requiring the North Carolina prison to either provide the plaintiff with surgery or set up a committee that would properly assess whether a surgery referral would be in her best interest); *Iglesias v. Fed. Bureau of Prisons*, 598 F. Supp. 3d 689, 701–09 (S.D. Ill. 2022) (holding that the federal Bureau of Prisons' bureaucratic deflections, impeding the plaintiff's referral for surgery and proper housing placement, violated the Eighth Amendment and Fifth Amendment equal protection); *Campbell v. Kallas*, No. 16-CV-261, 2020 WL 7230235, at *8 (W.D. Wis. Dec. 8, 2020) (requiring a Wisconsin prison to schedule a consultation with a qualified surgeon); *Norsworthy v. Beard*, 87 F. Supp. 3d 1164, 1195 (N.D. Cal. 2015), *appeal dismissed*, 802 F.3d 1090 (9th Cir. 2015) (granting a preliminary injunction requiring the California prison to provide the plaintiff with surgery); *Soneeya v. Spencer*, 851 F. Supp. 2d 228, 252 (D. Mass. 2012) (requiring a Massachusetts prison to consider whether the plaintiff was a candidate for surgery). At least as to the question presented here regarding the permissible scope of

injunctive relief, this Court should not diverge from this trend.[12]

Of course, when determining whether an injunction is within the permissible scope of relief under *Ex parte Young*, this Court need not use so narrow a frame as the precise sex-reassignment surgery at issue. Numerous cases in this circuit have allowed injunctive relief ordering a surgery or some form of specialist care that was found to be medically necessary and was unduly delayed or denied. *See, e.g.*, *Stevenson v. Toce*, 113 F.4th 494, 500 (5th Cir. 2024) (affirming the denial of a motion to dismiss where a prisoner-plaintiff sought damages and an injunctive order for surgery to fix broken screws in his ankle); *Delaughter*, 909 F.3d at 137 (holding an *Ex parte Young* exception applied where plaintiff alleged "that defendants violated his Eighth Amendment rights by failing to provide required hip surgery and requested in his prayer for relief that he 'receive the surgery that he needs'"; *Miles v. Rich*, 576 F. App'x 394, 395 (5th Cir. 2014) (affirming the denial of defendant's summary judgment motion where prisoner sought knee surgery).

---

[12] As mentioned, in dismissing Ms. Haverkamp's claims, the district court relied on *Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019). ROA.2649. *Gibson*, however, was an Eighth Amendment medical deliberate indifference case, not a Fourteenth Amendment Equal Protection Clause case. *See Gibson*, 920 F.3d at 215–16. Furthermore, as stated above, *see infra* p. 36, "the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Verizon*, 535 U.S. at 646. These cases are provided not to make an argument on the merits, but because these injunctions disprove any issue with the scope of *Ex parte Young* relief as to Ms. Haverkamp's injunctive relief sought.

For all these reasons, when determining whether Ms. Haverkamp's requested relief falls within the permissible scope of relief under *Ex parte Young*, this Court should not hesitate to conclude that it is. The district court could order Defendants to provide a medically necessary surgery. This Court should reverse its decision holding otherwise.

### iii.   *Ms. Haverkamp seeks a negative injunction in the alternative.*

Finally, Ms. Haverkamp's prayer for relief includes a request for both an affirmative injunction and an alternative negative injunction. Thus, even if this Court finds that her request to order Defendants to provide her with gender reassignment surgery is improper, Ms. Haverkamp's alternative prayer for relief to enjoin Defendants from implementing state policy in a way that prohibits her access to surgery—i.e., enjoining Defendants from promulgating a categorical ban that treats her differently from other women on the basis of her transgender identity—would still be valid. ROA.2377–78 ¶¶ 51, 53, 58. Such a "negative" injunction does not face the same scope of relief issues that the district court and Defendants raise for discretionary affirmative injunctions.

### CONCLUSION

This Court should reverse the district court's judgment on the pleadings and remand for further proceedings.

Respectfully submitted,

/s/ D Dangaran

 D Dangaran
 Samuel Weiss
 RIGHTS BEHIND BARS
 1800 M St. NW
 Front 1 # 33821
 Washington, DC 20033

 Ace McLaurin Factor
 Chanler Ashton Langham
 SUSMAN GODFREY, L.L.P.
 Suite 5100
 Houston, TX 77002

*Counsel for Plaintiff-Appellant*

Dated: February 5, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date:  February 5, 2025

*/s/ D Dangaran*
D Dangaran

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and contains, excluding the parts of the document exempted by Fed. R. App. P. 32(f), 12,007 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times Roman.

Date:  February 5, 2025

*/s/ D Dangaran*
D Dangaran