No. 24-40709

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

DAVID ALLEN HAVERKAMP, ALSO KNOWN AS BOBBIE LEE HAVERKAMP
*Plaintiff-Appellant,*

*v.*

DOCTOR LANNETTE LINTHICUM; OWEN MURRAY; CYNTHIA JUMPER; PHILLIP KEISER; JOHN BURRUSS; MICHELLE ERWIN; KRIS COONS; BRIAN EDWARDS; JULIA HILNER,
*Defendants-Appellees.*

———————————————————

On Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi Division
No. 2:17-CV-18 (Hon. Drew B. Tipton, U.S. District Judge)

———————————————————

## APPELLANT'S REPLY BRIEF

———————————————————

D Dangaran                           Ace McLaurin Factor
Samuel Weiss                         Chanler Ashton Langham
RIGHTS BEHIND BARS                   SUSMAN GODFREY, L.L.P.
1800 M St. NW                        Suite 5100
Front 1 # 33821                      Houston, TX 77002
Washington, DC 20033

April 28, 2025

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

## <u>Plaintiff-Appellant</u>

David Allen Haverkamp, also known as Bobbie Lee Haverkamp

## <u>Counsel for Plaintiff-Appellant</u>

Ace McLaurin Factor
Chanler Ashton Langham
SUSMAN GODFREY, L.L.P.
Suite 5100
Houston, TX 77002

D Dangaran
Samuel Weiss
RIGHTS BEHIND BARS
1800 M St. NW
Front 1 # 33821
Washington, DC 20033

## <u>Defendants-Appellees (appeared on Fifth Circuit Docket)</u>

Lannette Linthicum
Owen Murray
Cynthia Jumper
Phillip Keiser
John Burruss
Michelle Erwin
Kris Coons
Bryan Edwards
Julia Hilner

**Counsel for Defendants-Appellees**

Ken Paxton
Brent Webster
Aaron L. Nielson
Cameron Fraser
Eric Scott Abels
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-059)
Austin, TX 78711-2548


Dated: April 28, 2025

/s/ *D Dangaran*
D Dangaran
Attorney of Record for Plaintiff-Appellant, Bobbie Lee Haverkamp

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

TABLE OF CONTENTS ......................................................................................iv

TABLE OF AUTHORITIES ................................................................................. v

INTRODUCTION................................................................................................1

ARGUMENT .......................................................................................................3

   I.   Ms. Haverkamp Named Proper Defendants Under *Ex parte Young*...............3

     A.   Dr. Murray Exerted Control Over Ms. Haverkamp's Care By Instructing Clinicians Not to Refer Anyone to Gender Reassignment Surgery ...................4

     B.   Dr. Linthicum Exerted Control Over Ms. Haverkamp's Care By Implementing G-51-11 to Forbid Gender Reassignment Surgery ....................6

   II.   Because Ms. Haverkamp Sued Defendants Who Enforced a Policy Ban On Her Equal Access to Medical Care, She Has Article III Standing.........................7

   III.   Sovereign Immunity Does Not Bar Jurisdiction Over Ms. Haverkamp's Claims Under *Ex parte Young* ...............................................................................9

     A.   Defendants Conflate Qualified Immunity and Sovereign Immunity.........11

     B.   Courts Can Order Defendants to Provide Surgery Under *Ex parte Young*13

     C.   *Gibson* Does Not Control This Case, Which Does Not Raise An Eighth Amendment Claim.........................................................................................15

     D.   Defendants Raise a Novel Merits Defense to Ms. Haverkamp's Equal Protection Clause Claim ..................................................................................21

     E.   Plaintiff Raised Alternative "Negative Injunction" In District Court .......22

CONCLUSION ..................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015) ........................................17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................22

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024) ......................12

*Brown v. Zavaras*, 63 F.3d 967 (10th Cir. 1995) ....................................20

*Cordellioné v. Comm'r, Ind. Dep't of Corr.*, No. 3:23-CV-135, 2024 WL 4333152 (S.D. Ind. Sept. 17, 2024) ................................................................19

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) .................................................9

*Davis v. Scherer*, 468 U.S. 183 (1984)......................................................12

*Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2017) .............................14

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309 (5th Cir. 2024) .............................................................................................7, 8

*Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019) ..........................2, 17, 18

*Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177 (5th Cir. 2007) ............22

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..............................................13

*Haverkamp v. Linthicum*, 6 F.4th 662 (5th Cir. 2021) ("*Haverkamp I*") ................6

*Helling v. McKinney*, 509 U.S. 25 (1993) .................................................17

*Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257 (11th Cir. 2020)..................18

*King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016) ...................................19

*LaBounty v. Adler*, 933 F.2d 121 (2d Cir. 1991).......................................20

*Landry's, Inc. v. Ins. Co. of Pa.*, 4 F.4th 366 (5th Cir. 2021) ..................9

*Miels v. Rich*, 576 F. App'x 394 (5th Cir. 2014)......................................14

*Morris v. Dearborne*, 181 F.3d 657 (5th Cir. 1999) ..........................13, 14

*Paterson v. Weinberger*, 644 F.2d 521 (5th Cir. 1981)..............................8

*Peoples Nat'l Bank v. Off. of the Comptroller of the Currency of the United States*, 362 F.3d 333 (5th Cir. 2004) ................................................3

*Stevenson v. Toce*, 113 F.4th 494 (5th Cir. 2024) ....................................14

*Tex. Democratic Party v. Abbott*, 961 F.3d 389 (5th Cir. 2020)....................6, 7, 21

*Umphress v. Hall*, --- F.4th ----, No. 20-11216, 2025 WL 1009058 (5th Cir. Apr. 4, 2025) ................................................................................3

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635 (2002)............passim

*Williams ex rel. J.E. v. Reeves*, 954 F.3d 729 (5th Cir. 2020)................11

*Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995)......................................20

## INTRODUCTION

In her lawsuit, Ms. Haverkamp alleges that Defendants Murray and Linthicum violated the Equal Protection Clause when—as revealed in discovery—they told their subordinates that TDCJ policy prohibited gender reassignment surgery ("GRS"), which directly impacted Ms. Haverkamp's ability to receive such medical care. On appeal, Ms. Haverkamp presents evidence in the record that establishes Defendants Murray and Linthicum as the proper defendants for her claims. Defendants seem to wish away all evidence contrary to their position rather than addressing the facts head on. But this Court must review the factual record when assessing whether it has jurisdiction. It cannot set aside expert testimony from Dr. Meyer, who used to report to Defendant Murray and who explicitly stated that Defendant Murray told him and others that they were strictly forbidden from providing referrals for GRS. Nor can it simply ignore emails in which Dr. Linthicum interpreted Texas policy G-51-11 to not provide GRS and declared that position in public communications. These jurisdictional facts show that Defendants Murray and Linthicum are proper defendants under *Ex parte Young*. They also establish that Ms. Haverkamp has Article III standing to bring this appeal.

That leaves sovereign immunity. *Ex parte Young* provides an exception to state sovereign immunity here because Ms. Haverkamp has alleged an ongoing violation of the Equal Protection Clause. A district court *could* issue an order

preventing Defendants Murray and Linthicum from barring a specific surgery for transgender women when cisgender women have access to that surgery. Ms. Haverkamp's clear sex discrimination claim meets the *Ex parte Young* exception: Defendants cannot receive sovereign immunity for discriminatory conduct.

It should not be lost on this Court that Defendants advocate for an extraordinary expansion of the sovereign immunity doctrine. Because Defendants concede that this Court should not reach the merits on review of a sovereign immunity decision, they instead stretch the category of "jurisdictional facts" beyond recognition to include the holding of *Gibson v. Collier*, 920 F.3d 212 (5th Cir. 2019). This Court should not take the bait. *Gibson* is an Eighth Amendment case and therefore relies on an entirely separate legal doctrine than that of the Fourteenth Amendment Equal Protection Clause claim at hand. Whether *Gibson* impacts Ms. Haverkamp's claim is at best a merits question, distinct from the sovereign immunity question presented on appeal.

Even if this Court decides *Gibson* bears on the sovereign immunity question because the plaintiff there sought the same relief as Ms. Haverkamp, *Gibson* did not *bar* GRS, nor did *Gibson* opine on the scope of *Ex parte Young* relief. It held only that the Eighth Amendment does not require such care. Because Ms. Haverkamp's claim relies on a different analysis and may reach a different outcome, sovereign immunity is not warranted. For these reasons, this Court should reverse and remand.

**ARGUMENT**

## I.  Ms. Haverkamp Named Proper Defendants Under *Ex parte Young*

This Court may "dismiss for want of jurisdiction only if 'it appears *certain* that [the plaintiff] cannot prove a plausible set of facts that establish subject matter jurisdiction.'" *Umphress v. Hall*, --- F.4th ----, No. 20-11216, 2025 WL 1009058, at *2 (5th Cir. Apr. 4, 2025) (emphasis added). Ms. Haverkamp's opening brief presented the jurisdictional facts in the record that establish Drs. Murray and Linthicum as proper Defendants to her claims under *Ex parte Young*. She has therefore met her burden of proving subject-matter jurisdiction exists. *See Peoples Nat'l Bank v. Off. of the Comptroller of the Currency of the United States*, 362 F.3d 333, 336 (5th Cir. 2004).

Defendants blatantly misrepresent the record in a last-ditch effort to argue that this Court does not have jurisdiction due to sovereign immunity. But Defendants' unwillingness to represent the record does not deprive this Court of jurisdiction.

Defendants argue that Plaintiff's opening brief failed to argue that the district court clearly erred. Appellees' Brief ("Ans. Br.") at 22. This is patently false. Plaintiff provided the proper standard of review, Appellant's Opening Brief ("AOB") at 24, argued the district court failed to resolve a dispute of jurisdictional facts as to Dr. Murray, *id.* at 32–33, and argued that "the district court's finding that Dr. Linthicum is an improper defendant is clearly erroneous," *id.* at 35.

A review of the factual record shows that the district court clearly erred in its jurisdictional fact-finding. Thus, this Court should hold that Drs. Murray and Linthicum are proper defendants for Ms. Haverkamp's claims under *Ex parte Young*.

### A. Dr. Murray Exerted Control Over Ms. Haverkamp's Care By Instructing Clinicians Not to Refer Anyone to Gender Reassignment Surgery

Defendants barely address Dr. Meyer's sworn testimony and expert report. *See* ROA.4229 ¶ 23 ("TDCJ inmates cannot receive surgery to change their sex."); ROA.4229 ¶ 24 ("Gender Dysphoria consultants [in UTMB's Gender Dysphoria Specialty Clinic] were prohibited from recommending or referring any inmate for sex-reassignment surgery as a treatment for Gender Dysphoria."); ROA.4254 ¶ 90 ("Dr. Owen Murray is the provider at UTMB who has the authority to 'approve a provider's request for sex reassignment surgery' for an inmate experiencing Gender Dysphoria."); ROA.4254 ¶ 93 ("When I accepted the job at the Clinic, I was expressly told by at least Dr. Murray and Dr. Penn that 'this clinic would not offer surgery' as a treatment for Gender Dysphoria."); ROA.4255 ¶ 93 ("I was expressly told on several occasions by Dr. Penn, Dr. Murray, and others that we were not allowed to refer or recommend inmates for surgery as a treatment for Gender Dysphoria."); *id.* ("TDCJ and UTMB had a prohibition on sex-reassignment surgery as a treatment for Gender Dysphoria."); *id.* ("[T]he prohibition on referrals or recommendations for surgery was justified by the application of Policy G-51.11.);

ROA.4255 n.98 ("I have reviewed Dr. Penn's testimony in which he stated that I had the ability to recommend inmates for surgery. *See* [ROA.4537–38] at 212:17-213:9. I disagree with that testimony, and it is inconsistent with my experience at the UTMB/TDCJ Gender Dysphoria Specialty Clinic."). But those facts, as well as the internal inconsistencies in Dr. Murray's deposition and other testimony, present enough evidence to make Dr. Murray a proper defendant to be sued under *Ex parte Young*. As Plaintiff noted in her opening brief, the district court did not decide whether Dr. Murray was a proper defendant. AOB at 12. This Court should find that he is or remand for the district court to resolve the disputed jurisdictional facts. *Id.* at 26.

Defendants contradict Dr. Meyer's report by forcing their view of the facts. *See* Ans. Br. at 32 ("If Dr. Meyer thought Haverkamp needed GRS, he could have initiated a surgical referral or discussed the recommendation with UTMB leadership."); *id.* at 33 ("Dr. Meyer never claimed that Dr. Murray was responsible for creating, changing, or enforcing [a GRS prohibition]."). But Dr. Meyer stated under oath that he "was expressly told on several occasions by . . . Dr. Murray . . . that [he was] not allowed to refer or recommend inmates for surgery as a treatment for Gender Dysphoria." ROA.2575. He understood that such a prohibition on GRS, under Dr. Murray's order, was the policy at the UTMB clinic while he was working there. *See* ROA.4255 ¶ 93. Thus, through Dr. Meyer's

testimony, Ms. Haverkamp *did* establish that "Dr. Murray was responsible for creating" or at least "enforcing that policy." Ans. Br. 33. He is therefore a proper defendant for Ms. Haverkamp's claims under *Ex parte Young*. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020).

### B. Dr. Linthicum Exerted Control Over Ms. Haverkamp's Care By Implementing G-51-11 to Forbid Gender Reassignment Surgery

Defendants ignore all of the evidence that Ms. Haverkamp has amassed since discovery took place after this Court remanded this case to the district court in *Haverkamp v. Linthicum*, 6 F.4th 662 (5th Cir. 2021) ("*Haverkamp I*"). Defendants misstate Plaintiff's arguments related to Dr. Linthicum, pointing to only her general responsibilities in health care policy, her previous role on the Committee, and her alleged role in overseeing the grievance process, all of which were part of her complaint and subject to this Court's *Haverkamp I* appeal. Ans. Br. 30–31. Defendants look past Ms. Haverkamp's decision to "not advance the claim that the grievance ties Dr. Linthicum to Ms. Haverkamp's denial." AOB at 33 n.10. Defendants thus repeat the district court's error. *See* ROA.2647 (dismissing the claims against Linthicum because her supervisory role did not establish her "involvement in the investigation or the denial of [Ms. Haverkamp's] grievance").

Similarly, Defendants conveniently ignore the emails entered into the record after discovery, which differentiates the jurisdictional facts as to Dr. Linthicum in this appeal from the facts presented in *Haverkamp I*. *See* AOB at 33–35. This Court

should review Plaintiff's new evidence tying Dr. Linthicum to Plaintiff's allegations and conduct a proper *de novo* review of Dr. Linthicum's sovereign immunity defense. Here, unlike in *Haverkamp I*, Plaintiff has presented evidence showing Dr. Linthicum enforced a prohibition on GRS in public communications as well as in directives to her subordinates. *See* ROA.2576–77. Dr. Linthicum interpreted Policy G-51-11 and made official statements that GRS "is not a covered benefit under the Offender Health Care Plan." ROA.4638; *see also* ROA.4639–40. And Dr. Murray himself testified that Dr. Linthicum was involved in reviewing any recommendations for GRS. *See* ROA.4446 at 45:7–46:1. Dr. Linthicum's public statements are "affirmative action[s]" made in exercise of her duties to enforce policy. *Tex. Democratic Party*, 961 F.3d at 401.

The district court clearly erred by failing to take these emails into account when dismissing Dr. Linthicum.

## II.   Because Ms. Haverkamp Sued Defendants Who Enforced a Policy Ban On Her Equal Access to Medical Care, She Has Article III Standing

To establish Article III standing, "a plaintiff bears the burden of showing (1) an injury in fact, (2) fairly traceable to the defendant's challenged conduct, (3) that is likely redressable by the requested relief." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 314 (5th Cir. 2024). This Court reviews standing *de novo* and "review[s] findings of fact related to standing for clear error." *Id.*

Because Plaintiff seeks both damages and prospective relief, this Court considers standing through the lens of both her past harm and continuing or future harm. *Id.*

Defendants assert that Plaintiff failed to prove that her injuries are traceable to Defendants Murray or Linthicum. Ans. Br. at 35–36. Plaintiff need only show that she met her burden by a preponderance of the evidence. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (differentiating a facial attack on subject-matter jurisdiction with a factual attack, in which defendants submit affidavits and evidence related to jurisdictional defects). She has done so, through all the evidence provided discussed in her opening brief, *see* AOB at 16–20, 30–35, and in section I herein.

If this Court reaches the issue, it has more than enough evidence to conclude that Ms. Haverkamp has Article III standing. As stated above, although the district court did not determine whether Dr. Murray was a proper defendant, and found that Dr. Linthicum was not a proper defendant, the record contains ample evidence showing that they are both proper defendants. *See* AOB at 13–21 (discussing evidence outside the pleadings relevant to Defendants' actions). The same evidence showing they are proper defendants under *Ex parte Young* supports the conclusion that Ms. Haverkamp's allegations are traceable to them. Namely, Dr. Meyer's report and Dr. Linthicum's emails amount to a preponderance of evidence showing Dr. Murray and Dr. Linthicum created or enforced a prohibition on GRS.

290a30c221b722f5

As Plaintiff argued in her opening brief, Dr. Murray's testimony is internally inconsistent. *See* AOB at 32 n.9. On the one hand, Dr. Murray testified that he did not intervene at all in the care that the consultants in his clinic—such as Dr. Meyer—provides. ROA.4538 at 215. But on the other hand, Dr. Murray also testified that he *and* Dr. Linthicum must approve any referrals for GRS before they are submitted to the medical department. ROA.4446 at 45:7–46:1. Dr. Murray's testimony thus implicates himself and Dr. Linthicum as decisionmakers in the type of care Ms. Haverkamp seeks. For all these reasons, Plaintiff has shown by a preponderance of the evidence that Dr. Murray is a proper defendant.

Alternatively, because of the fact-intensive inquiry that requires the weighing of evidence in order to determine whether Plaintiff met her burden, if this Court thinks there is any doubt as to whether Plaintiff has shown by a preponderance of the evidence that Defendants Murray and Linthicum are proper defendants for her constitutional claims, this Court should allow the district court to reach this defense in the first instance. *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005) ("[W]e are a court of review, not of first view."); *Landry's, Inc. v. Ins. Co. of Pa.*, 4 F.4th 366, 372 n.4 (5th Cir. 2021) (same).

## III.   Sovereign Immunity Does Not Bar Jurisdiction Over Ms. Haverkamp's Claims Under *Ex parte Young*

The only remaining jurisdictional hurdle is Defendants' sovereign immunity defense. In essence, Defendants put forth a two-pronged merits argument. Neither

argument is proper upon this appeal of sovereign immunity. First, they repeat their argument made below, adopted by the district court, that this Court's Eighth Amendment jurisprudence bars Ms. Haverkamp's completely different Equal Protection Clause claim. *See* Ans. Br. at 21–26. Second, they present their defense on the merits of Ms. Haverkamp's Equal Protection Clause argument. *Id.* at 27–28.

It makes no difference that Defendants frame their obvious merits arguments as arguments about Ms. Haverkamp's "requested remedy." *Id.* at 17. Nor does their statement that "the district court properly limited its analysis to a *jurisdictional* question" change the fact that Defendants have fixated throughout the analysis on merits questions rather than questions of the proper scope of potential relief under *Ex parte Young*. For the question here is *not* whether the district court "may compel Texas officials to perform a particular medical procedure (GRS) on a particular inmate (Haverkamp)." Ans. Br. at 23. Rather, the question is whether prospective relief sought under *Ex parte Young* can include enjoining government officials from enforcing a policy ban on one type of medical care based on a sex-based classification in alleged violation of the Fourteenth Amendment's Equal Protection Clause. AOB at 1.

Because Ms. Haverkamp has alleged that Defendants Murray and Linthicum (state officials) have violated federal law, and because she seeks prospective injunctive relief to redress their ongoing conduct, she has met the basic elements of

an *Ex parte Young* claim. *See Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). By analyzing "the merits of the claim," Defendants go beyond the question "whether suit lies under *Ex parte Young*." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002).

### A. Defendants Conflate Qualified Immunity and Sovereign Immunity

Defendants frame their brief with a fundamental error that misinterprets federal law: the ministerial duty–discretionary function analysis has been ripped from the qualified immunity context and shoehorned into the sovereign immunity analysis.

Despite the language in *Ex parte Young* itself, there is no body of law blocking jurisdiction on sovereign immunity grounds from cases challenging actions (or inactions) that go beyond tasks within a ministerial duty. As a result of this lack of support, Defendants have no choice but to turn to inapposite law, such as qualified immunity and First Amendment merits analysis that use the term "discretionary" in different contexts. Whether an action is discretionary is particularly important in the context of qualified immunity, because the qualified immunity defense becomes relevant only when there is a constitutional violation, or in other words, when a plaintiff *could* obtain equitable relief. If qualified immunity applies in such cases, the plaintiff simply could not get *damages*, even if it could obtain injunctive relief. The analysis of qualified immunity therefore inherently comes post-jurisdiction,

post-sovereign immunity, and post-merits analysis. Defendants are trying to fold this analysis back into an earlier stage, which is self-refuting.

Defendants rely on case law from the qualified immunity context to support their argument in the entirely different context of sovereign immunity, and specifically the scope of relief under *Ex parte Young* that creates an exception to sovereign immunity. If this Court adopts Defendants' error, it would drastically alter the sovereign immunity analysis. As stated above, many quotations in Defendants' discussion of *Ex parte Young* are taken from the qualified immunity context. *See* Ans. Br. at 21. For instance, *Davis v. Scherer*, 468 U.S. 183 (1984), is analyzing qualified immunity, not sovereign immunity or *Ex parte Young*, when it discusses discretionary authority. *See id.* at 193–96 & 196 n.14 (discussing qualified immunity arguments and the discretionary authority considered in that context).

Similarly, in *Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024), the Court did not address sovereign immunity or *Ex parte Young* at all, but rather the First Amendment's merits analysis for determining whether speech is government speech or private speech. *See id.* at 336–37. One of the elements of that test is "the public's likely perception as to who . . . is speaking." *Id.* at 337. When determining that the public was not likely to think that sexual-content ratings on public school library books was government speech, the Court discussed that it was not persuaded by the State's argument that assigning the ratings was a "purely ministerial task." *Id.*

(quoting *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999)). The analysis was entirely about the First Amendment.

In *Morris v. Dearborne*, quoted in *Book People*, the defense at issue was, yet again, qualified immunity (and statutory immunity), not sovereign immunity. *See* 181 F.3d at 665 ("As a general rule, government officials performing discretionary functions are entitled to qualified immunity." (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also id.* at 674 (discussing a state statute that explicitly removes "any act . . . that involves the exercise of judgment or discretion on the part of the employee" from liability).

Defendants haphazardly cite these cases as discussing the scope of relief under *Ex parte Young*, cherry-picking language from entirely different contexts to invent a novel requirement in the sovereign immunity context under the guise of binding case law. This is all in an attempt to surmount the clear precedent in this Circuit and others that have provided injunctive relief for medical claims, including affirming injunctions requiring defendants to provide a particular surgery.

## B. Courts Can Order Defendants to Provide Surgery Under *Ex parte Young*

Defendants argue that injunctive relief under *Ex parte Young* cannot veer into the discretionary territory of medical decisions. *See* Ans. Br. at 20, 22, 24, 25, 27. But, in her opening brief, Plaintiff pointed to numerous Fifth Circuit cases that

granted injunctive relief for medical interventions. *See* AOB at 40–51. This precedent refutes Defendants' claim.

Defendants either misconstrue or ignore the upshot of this case law. These cases are examples showing that federal courts have ordered surgical care as injunctive relief (and therefore *can* order such relief under *Ex parte Young*). Defendants' treatment of this Court's decision in *Delaughter v. Woodall*, 909 F.3d 130 (5th Cir. 2017), is illustrative. They attempt to differentiate *Delaughter* from the case at hand by arguing that *Delaughter* held that a plaintiff could seek injunctive relief for a hip surgery, whereas Ms. Haverkamp seeks a different type of surgery that this Court has held is not required under the Eighth Amendment. Ans. Br. at 25. They differentiate other Fifth Circuit cases simply based on the type of surgery, too. *See id.* at 26 (dismissing Plaintiff's reliance on *Stevenson v. Toce*, 113 F.4th 494 (5th Cir. 2024), and *Miels v. Rich*, 576 F. App'x 394 (5th Cir. 2014), merely because they involve different medical procedures).

But, in this appeal, Ms. Haverkamp does not need to succeed in a qualified immunity analysis that looks at a narrow view of the relief requested to show whether Defendants were on clear notice that their acts violated the constitution. *Cf. Morris*, 181 F.3d at 669 ("Dearborne's success in this appeal hinges, in large part, upon the degree of fit between the facts of this case and our opinions in [three other cases] . . . ."). Qualified immunity is not currently before the Court. This appeal

poses questions regarding *Ex parte Young*'s scope. Other cases that have taken a similar action—ordering defendants to provide a surgery—are thus highly relevant. As Defendants concede, this Court has *not* reached the issue whether affirmative injunctions are always improper under sovereign immunity. *See* Ans. Br. at 19 n.5. The cases cited in Plaintiff's opening brief show that affirmative injunctions are permissible, including in the circumstance of a medically necessary surgery. This Court should not be distracted by Defendants' obvious effort to downplay the significance—and the uniform result—of these cases as relevant to the scope of relief permissible under *Ex parte Young*. Notably, Defendants point to *no* case showing *Ex parte Young* does not permit a Court to enjoin defendants to perform or provide access to surgical care.

## C. *Gibson* Does Not Control This Case, Which Does Not Raise An Eighth Amendment Claim

Defendants rely heavily on *Gibson*, making merits arguments that they frame as arguments about Plaintiff's available relief under *Ex parte Young*. *See* Ans. Br. at 21–25. But Defendants get it all wrong.

*Ex parte Young* provides an exception to sovereign immunity here because Ms. Haverkamp's "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (quotation marks omitted). As Plaintiff argued in her opening brief, *alleging* that violation is all that matters at this stage. *See* AOB at 36–38. The merits are not part of the analysis.

15

*Verizon*, 535 U.S. at 646. Nevertheless, Defendants submit a detailed summary of *Gibson*, *see* Ans. Br. at 21–22, then attempt to apply *Gibson* to this appeal.

Defendants argue that because the district court did not make any factual findings relevant to the merits of the Equal Protection Clause, and instead only applied *Gibson*'s reasoning to Ms. Haverkamp's desired relief, the district court did not improperly reach the merits. Ans. Br. at 23.

This Court should reject this erroneous reasoning. Assessing the physical health of Ms. Haverkamp and taking it into consideration in light of the remedy she seeks *is* conducting a merits inquiry. Defendants concede that "[t]he district court was particularly concerned about the unique risk of performing GRS on Haverkamp, who is nearly 80 years old, 'stands 5 fee[t] 11 inches, weighs 222 pounds, and has a BMI of 31, which is within obesity range.'" Ans. Br. at 22 (quoting ROA.2649). Haverkamp's comorbidities are similarly merits-based facts and are thus improper here. *See id.* (quoting the district court's discussion of Haverkamp's "diabetes mellitus, hypertension, and hyperlipidemia," as well as her "high risk for chronic kidney disease and chronic kidney failure" (quoting ROA.2649)).

Ms. Haverkamp's medical history and physical health are *not* jurisdictional facts. The district court clearly erred by taking them into consideration at this stage. And this Court, upon its de novo review, should not take them into consideration at all. This medical information can only possibly be used in weighing evidence in

order to assess whether a particular medical determination is necessary. Such weighing is a classic Eighth Amendment merits analysis. *See, e.g.*, *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (stating that to constitute an Eighth Amendment violation, "prison conditions must pose 'an unreasonable risk of serious damage' to a prisoner's health—an objective test-and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." (quoting *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)). Defendants show their hand in making a merits analysis when discussing the "discretionary decisions regarding the medical care of state inmates" as limited by the Eighth Amendment's deliberate indifference standard. Ans. Br. at 32.

That argument seeks to circumvents a basic fact in this case: Ms. Haverkamp has not raised an Eighth Amendment claim. *Gibson* therefore does not control her case. *Gibson* did not *bar* GRS in all prisons within the Fifth Circuit; it held only that the Eighth Amendment could not "*require*[]" a prison to provide them. 920 F.3d at 228 (emphasis added); *see also id.* at 221 ("[T]here is no consensus in the medical community about the necessity and efficacy of [GRS] as a treatment for gender dysphoria."); 226 ("We see no basis in Eighth Amendment precedent . . . that would allow us to hold a state official deliberately (and unconstitutionally) indifferent, for doing nothing more than refusing to provide medical treatment whose necessity and

17

efficacy is hotly disputed within the medical community."). *Gibson*'s holding bears no weight on the Equal Protection Clause claim at issue here.

If this Court wants to decide whether *Gibson* impacts the completely separate Equal Protection Clause analysis, it must wait for an opportunity to address the merits, which pose a distinct question from the sovereign immunity question presented on appeal. *See Verizon*, 535 U.S. at 646 ("[W]hether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."). For the Fourteenth Amendment inquiry implicates different considerations than the Eighth Amendment inquiry. *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1291 (11th Cir. 2020) (Wilson, J., dissenting) ("[O]ur precedent has set up a clear, two-part test for establishing an Eighth Amendment violation, and one of those parts is a fact question, leaving little to ultimately review de novo. In other cases, like an Equal Protection Clause challenge or a Due Process case, our ultimate review of the constitutional violation driving the preliminary injunction is far more searching— the questions there are almost entirely legal. But a finding of subjective deliberate indifference is different; it is heavily fact-intensive.").

For example, *Gibson* stated that "no other prison has ever provided" the care sought by that plaintiff, reasoning that it could not be deemed "unusual" to not provide it if no one has received it before. 920 F.3d at 216. But Ms. Haverkamp's medical care *has* been provided by prisons before—indeed, by the very prison

system Ms. Haverkamp is in—and that is a core element of her claim. The record shows that Defendant Linthicum herself has approved the same surgery requested, but *only* for cisgender women. *See* AOB at 35 ("Dr. Penn testified that Dr. Linthicum approved breast reconstruction with implants for a cisgender woman after she had a mastectomy. ROA.4509 at 97."). So *Gibson* can be differentiated from the case at hand on the simple ground that the record shows *these* Defendants *have* provided this surgery to cisgender women, while preventing it for a similarly situated transgender woman such as Ms. Haverkamp. That argument, however, is a merits inquiry. Defendants thus improperly press this merits argument on appeal.

Moreover, many federal courts have addressed claims brought under both the Eighth Amendment and Fourteenth Amendment Equal Protection Clause and have conducted independent analyses for each theory, even when they sought the same remedy and were based on the same facts. *See, e.g.*, *Cordellioné v. Comm'r, Ind. Dep't of Corr.*, No. 3:23-CV-135, 2024 WL 4333152, at *18–19 (S.D. Ind. Sept. 17, 2024) (conducting separate analyses of an Equal Protection Clause claim and Eighth Amendment claim and holding that defendants violated both when they denied the plaintiff's GRS through enforcing a blanket prohibition on that type of medical care); *see also King v. Rubenstein*, 825 F.3d 206, 219–22 (4th Cir. 2016) (conducting independent analyses of an Equal Protection Clause claim and Eighth Amendment claim arising under the same allegations, and finding plaintiff plausibly alleged a

cause of action on both claims); *Brown v. Zavaras*, 63 F.3d 967, 970–72 (10th Cir. 1995) (conducting independent analyses of an Equal Protection Clause claim and Eighth Amendment claim arising under the same allegations, and concluding the Eighth Amendment claim was plausible while the Equal Protection Clause claim was not); *LaBounty v. Adler*, 933 F.2d 121, 123–24 (2d Cir. 1991) (conducting independent analyses of an Equal Protection Clause claim and Eighth Amendment claim arising under the same allegations, and concluding the Equal Protection Clause claim was plausible while the Eighth Amendment claim was not). The Fifth Circuit is no different. *See Woods v. Edwards*, 51 F.3d 577, 580–82 (5th Cir. 1995) (conducting distinct analyses for an Equal Protection Clause claim and an Eighth Amendment claim for wrongful detention, both of which were based on the plaintiff's prolonged detention in solitary confinement, and denying both). So the merits inquiry of Ms. Haverkamp's Fourteenth Amendment Equal Protection Clause claim must be conducted anew despite this Court's decision in *Gibson*. That inquiry *cannot* be conducted on this appeal. *Verizon*, 535 U.S. at 646.

The district court erred by reading *Gibson* to bar an entirely different Fourteenth Amendment Equal Protection Clause claim seeking the same remedy, and Defendants defend that erroneous decision in their brief. This Court should reverse and remand to correct the error.

### D. Defendants Raise a Novel Merits Defense to Ms. Haverkamp's Equal Protection Clause Claim

Putting *Gibson* aside, Defendants raise for the first time in the entire history of this case an argument about "leveling up" and "leveling down," based on a concurrence in an election law case. Ans. Br. at 27 (quoting *Tex. Democratic Party*, 961 F.3d at 417 (Ho., J., concurring). In so doing, Defendants present a bold-faced merits analysis. Like the *Gibson* merits that the district court relied on, this Fourteenth Amendment merits analysis is also improper. Defendants cannot reconcile the error by framing this argument as simply about the remedies. The remedy arguments Defendants put forth are tied to the merits, not to the scope of *Ex parte Young* relief and sovereign immunity.

This Court need not take Plaintiff's word on it. In this very case cited by Defendants, the Court held that the Equal Protection Clause claim—which sought affirmative injunctive relief—fell within the scope of *Ex parte Young*. *See Tex. Democratic Party*, 961 F.3d at 400–02 (majority). The Court then continued to the merits. *Id.* at 402. Judge Ho's concurrence is squarely on the merits, not the *Ex parte Young* inquiry. *See id.* at 416–17 (Ho, J., concurring) (assessing an age discrimination claim when discussing "leveling up" and "leveling down"). Thus, the precise remedy issue for the Equal Protection Clause claim—and whether a plaintiff will be meritorious in seeking it—is an inquiry for the merits stage, not sovereign

21

immunity or the scope of *Ex parte Young* relief. This precedent therefore supports Plaintiff's position in this appeal, not Defendants' position.

### E. Plaintiff Raised Alternative "Negative Injunction" In District Court

Defendants argue that Plaintiff's alternative claim for an injunction barring Defendants from interpreting policy G-51-11 in a manner that violates the Equal Protection Clause is waived. Ans. Br. at 28. But Ms. Haverkamp's Second Amended Complaint states: "[t]he Committee and the TDCJ enforce the policy in a manner that gender reassignment surgery is never allowed, even when medically necessary, when such surgery is provided to cisgendered [sic] female inmates."). ROA.2377–78 ¶ 51. It is true that Ms. Haverkamp's *prayer for relief* does not state her Equal Protection Clause theory within it when she requests a "prospective injunction prohibiting Defendants from implementing Policy G-51-11 in a manner that prohibits gender reassignment surgery." ROA.2378 ¶ 58. But this relief sought is plausible on its face *because* she has pled facts showing that she is treated differently from cisgender women. Thus, her prayer for relief and her allegations undoubtedly preserve the negative injunction, as more specifically discussed in her opening brief. Defendants' argument would greatly heighten the pleading requirements. *See Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) ("The plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## CONCLUSION

This Court should reverse the district court's judgment on the pleadings and

remand for further proceedings.


Respectfully submitted,

<u>/s/ *D Dangaran*</u>

D Dangaran
Samuel Weiss
RIGHTS BEHIND BARS
1800 M St. NW
Front 1 # 33821
Washington, DC 20033

Ace McLaurin Factor
Chanler Ashton Langham
SUSMAN GODFREY, L.L.P.
Suite 5100
Houston, TX 77002

*Counsel for Plaintiff-Appellant*

Dated: April 28, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date:  April 28, 2025

*/s/ D Dangaran*
D Dangaran

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and contains, excluding the parts of the document exempted by Fed. R. App. P. 32(f), 5,360 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times Roman.

Date:  April 28, 2025

*/s/ D Dangaran*
D Dangaran